Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

21ST JUDICIAL CIRCUIT
ST. LOUIS COUNTY CIRCUIT COURT

| | | |
|---|---|---|
| Dennis Geivett, | ) | |
| plaintiff, | ) | Cause #_23SL-CC04445_ |
| v. | ) | |
| | ) | Div. __1__ |
| AMC Management, LLC, | ) | |
| Mickey Montee | ) | The Hon. Judge Brian May |
| Christopher Lee, | ) | |
| Sandberg Phoenix & Von Gontard P.C. | ) | |
| Parkside Condominium Association | ) | |
| defendants | ) | |

**PLAINTIFF'S June 30, 2024, SECOND AMENDED PETITION**

For his causes of action against the defendants, by and through counsel, plaintiff writes and states the following:

**PARTIES-**

1. Plaintiff Dennis Geivett is an individual who has owned  2303 Yosemite Park Court Condominium Unit #D, in St. Louis County, Missouri, since July 2012.

2. Defendant AMC Management, LLC, is a Missouri Limited Liability Company under Chapter 347 RSMo. Hereinafter this defendant will be referred to as AMC.

3. Defendant Mickey Montee is a Missouri citizen and resident.

4. Defendant Christopher Lee is a Missouri citizen and resident.

5. Defendant SANDBERG, PHOENIX & VON GONTARD, P.C. is a Missouri Professional Corporation; hereafter this defendant will be referred to SPVG.

6. Defendant Parkside Condominium Association is a Missouri not-for-profit corporation; hereafter this defendant will be referred to as Parkside.

7. "Association Management Corp.", hereafter abbreviated AMC-1, was a corporation that contracted to manage Parkside approximately through May 2014, after

1

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

which - upon reasonable information and belief, and subject to future discovery - in early 2014 defendant AMC replaced and succeeded AMC-1 as manager of Parkside.

8.  Allen Seals was an agent, servant and/or employee, and manager of AMC-1 while it existed, whose actions and conduct alleged herein were performed during and within the course and scope of that agency, service and employment.

9. Allen Seals was an agent, servant and/or employee of defendant AMC when it replaced AMC-1 in managing Parkside 2014 to the present, whose actions and conduct alleged herein were performed during and within the course and scope of that agency, service and employment at times alleged with respect to defendant AMC.

10. Defendant Montee was an agent, servant and/or employee of defendant AMC, whose actions and conduct alleged herein were performed during, and within the course and scope of, that agency, service and employment.

11. Defendant Lee was an agent, servant and/or employee of defendant SPvG, whose actions and conduct alleged herein were performed during, and within the course and scope of, that agency, service and employment.

12. Defendant AMC was an agent, servant and/or employee of defendant Parkside, whose employees', agents', and servants' actions and conduct alleged herein were performed during and within the course and scope of that agency, service and employment, and particularly within the ambit of the terms of one or more condominium association management contracts between Parkside and AMC.

13. Defendant SPVG was an agent, servant and/or employee of defendant Parkside, whose employees, agents, and servants actions and conduct alleged herein were performed during and within the course and scope of that agency, service and employment, and particularly within the ambit of one or more series of attorney - client contracts of representation with Parkside, and/or with AMC.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

14. The Declaration establishing Parkside Condominium Association was recorded on or about 6/27/1985, along with the By-Laws, in book number 7853 pages 2260-2291 of the recorder of deeds of St. Louis County, Missouri.

15.  Parkside and  Parkside Condominium Association unit owners were and are governed by, and subject to, the Missouri "Uniform Condominium Act", RSMo § 448.1-101 to 448.4-120, among other laws.

**PARTICULAR PLEADING**:

16. Geivett pleads with "particularity"pursuant to (1) **Rule 55.15**,

"In all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity. Malice, intent, knowledge and any other condition of mind of a person may be averred generally";  and,

(2) pursuant to the requirements for a civil cause of action for treble damages under The Racketeer Influenced Corrupt Organizations Act, (hereafter RICO) 18 U.S.C.A. §§ 1961 et seq.]*., **Sedima, S.P.R.L. v. Imrex Co., Inc**., 473 U.S. 479, 105 S.Ct. 3275, 87 L.Ed.2d 346, 53 USLW 5034, Fed. Sec. L. Rep. ¶ 92,086, 1985-2 Trade Cases ¶ 66,666, RICO Bus.Disp.Guide 6100 (U.S.N.Y., Jul 01, 1985) (NO. 84-648)*, a *prima facie* case of a violation of 18 U.S.C.A. § 1962 requiring proof of a pattern of racketeering activity consisting of at least two acts of racketeering activity within ten years, or the collection of an unlawful debt.

**CHRONOLOGY APPLICABLE TO ALL COUNTS:**

17. On or about July 2012,  Geivett purchased Condominium Unit D(4), 2303 Yosemite Park Court, in St. Louis County, Missouri, as more particularly identified in Parkside's Lien January 9, 2014 , alleged below, for his personal use, and  particularly for his daughter to occupy.

18.  On August 7, 2012, Allen Seals mailed Geivett  a "Welcome" letter, stating in part  "Some of our responsibilities are: collecting the assessment fees,"; **Attachment # 1.**

19.  Pursuant to Mo. Sct. Rule 55.12  (hereafter  "Rule"),

"**55.12. Adoption of Statements By Reference**--Exhibits

3

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

Statements in a pleading may be adopted by reference in a different part of the same pleading or in another pleading or in any motion. An exhibit to a pleading is a part thereof for all purposes."

Geivett adopts and incorporates by reference and each and every attachment to this pleading as an Exhibit, without repetitive pleading.

20. On or about August 10, 2012, Geivett paid Parkside $1,227.55, and on Sept.5, 2012 Geivett paid Parkside  $ 524.00   "prepayment" of monthly assessments through the end of 2012.

21. During 2012 Geivett's daughter moved into Parkside Condominium Unit D.

22. Beginning in January, 2013, unbeknownst to Geivett, his daughter was not receiving notices of monthly condominium association assessment charges, and consequently she was delinquent in paying those monthly assessments.

## PARKSIDE V GEIVETT PETITION FOR ASSESMENTS 13SL-AC27679

23. On or about August 8, 2013, Parkside filed a "Petition for Assessments"  debt collection suit against Geivett in the Associate Circuit Court of St. Louis County, Missouri, 13SL-AC27679, **Attachment # 2**.

24. On or about Sept. 8, 2013, a special process server "served" Geivett by delivering the 13SL-AC27679 Petition along with a summons to appear in Court to him.

25.  Parkside's 13SL-AC27679 Petition for Assessments suit alleged, in part, as follows:

¶ 3.  …"A copy of the Declaration is attached hereto and is incorporated by reference as if fully set forth herein."

¶ 5 …"That Plaintiff, via the Board, levied against Defendant's Unit…together with late fees of $10.00 and carport fee of $25.00 per month."

4

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

¶ 7.  "The plaintiff via the Board and pursuant to its authority under the Declaration of Parkside further declared the remaining unpaid annual assessment for 2013, $690.00 (August through December) immediately due and payable due to the above  outstanding balance."

26.   Parkside did not attach a copy of the  Declaration as it had alleged in ¶3.

27.   Geivett did not own, occupy, or in any way have or use a carport.

28.   Then and now Rule 55.16 states:

"55.16. **Averments and Denial of Conditions Precedent**

In pleading the performance or occurrence of conditions precedent, it is sufficient to aver generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity."

29.    Parkside did not allege "that all conditions precedent have been performed or have occurred."  in the 13SL-AC27679 Petition.

30.    On or about Sept 9, 2013,  Geivett telephoned the Ahlheim &Dorsey LLC office and spoke with legal assistant Ulah Decker about paying the Parkside lawsuit 13SL-AC27679.

31.    After Decker's phone call with Geivett, Decker requested - either by phone or internet -  that **AMC-1** provide Geivett's "account ledger."

32.   On or about September 10, 2013,  Cindy - an employee of **AMC-1** - faxed a "current" ledger to Ulah Decker in response to Decker's request.

33.   Ulah Decker received Cindy's faxed ledger of Geivett's account, hand wrote, "wants to pay off" on it, and delivered it to attorney Stephen Ahlheim.

34.   Based upon reasonable discovery, Attorney Stephen Ahlheim hand wrote charges for particular line items and returned it to Ulah Decker to communicate to Geivett.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

35.   **Attachment # 3** is the AMC-1 fax to Decker, with Decker's handwritten "wants to pay off" message and Ahlheim's handwritten line items totaling "Pay Off" $2065.50: <u>that "current ledger" did not include $690 for August-December.</u>

36.  On September 11,2013, during a phone call Decker told Geivett that the "pay off" was  $2065.50 before the Oct.2, 2013, the Court date.

37.  On September 11, 2013, during that phone call Geivett told Decker he agreed to pay $2065.50 before the Oct.2, 2013 Court, an "Accord" to settle Parkside's lawsuit.

38.  After that call, Decker emailed Cindy at AMC-1 that Geivett agreed to pay off the lawsuit: **Attachment 4.**

39.  Throughout the phone calls between Decker and Geivett leading to Geivett's agreement to pay the $2065.50 "Pay off" ,  Decker never informed Geivett:

 (1) that the paragraph 7 allegation in Parkside's Petition -

   " ¶ 7. The plaintiff via the board and pursuant to its authority under the declaration of Parkside further declared the remaining unpaid annual assessment for 2013, $690.00 (August through December) immediately due and payable due to the above  outstanding balance.",

was false; or that -

 (2)  her $2065.50 "pay off" to settle quote excluded the $690 amount for August through December that Parkside had alleged in ¶ 7.

40.  On Sept. 30,2013, Geivett delivered a $2065.50 cashiers check payable to Parkside Condominium Association to Cindy at the office of AMC-1, in "Satisfaction" of the  $2065.50 "Accord". **Attachment # 5** is a copy of the cashiers check with deposit through Commercial Bank ultimate endorsement in interstate commerce.

41. After Geivett handed the $2065.50 cashiers check to Cindy, he asked her for a "receipt".

42. Cindy did not know how to "code" in her accounting software program the gross amount of $2065.50 she had received from Geivett.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

43. As Cindy did not know how to "account code" the $2065.50 payment,  Cindy requested a 'what's this for?' explanation from Ulah Decker.

44.  On Sept. 30, 2013, in response to Cindy's request, Ulah Decker emailed Cindy - a "wire" communication, particular stating "We did not accelerate" - **Attachment 6.**

45.  Decker's "*We did not accelerate*" statement reveals:

(1)  AMC-1's September ledger did not contain an '*immediately due and payable*  $690' charge for monthly assessments due for August - December;

(2)  Parkside's Board had not declared  $690 monthly assessments for August - December "immediately due and payable";

(3)  Parkside's paragraph 7 allegation in the Petition for Assessments was false and fabricated;

(4)  That false $690 allegation was part of a scheme to obtain payment - by deception in the context of lawsuit duress - of a debt that did not exist;

(5)  That false $690 allegation was intended to deceive and coerce a 'give-up, give-in' capitulation by Geivett in the suit without close study or inspection, and in the event of a debtor default in small claims court, a legal "default judgment" for the court to approve the suit without close inspection.

46. After Cindy received Decker's email, Cindy printed out Geivett's account ledger at AMC-1, then typed a message at the bottom relaying what Ulah had emailed, and handed that to Geivett as and for the "receipt" he had requested: **Attachment 7.**

47.  Cindy, together with other employees of AMC-1 then "negotiated" Geivett's $2065.50 cashiers check payment by depositing it into Commercial Bank where AMC-1 maintained and managed Parkside's financial account.

48.  In turn, Commercial Bank processed that negotiable paper in due course in interstate commerce, ultimately crediting the amount to Parkside's account, from which

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

the proceeds were used to pay AMC-1 and Ahlheim via checks and or wire transfers in interstate commerce.

49. After Geivett's cashier's check had been duly negotiated in interstate commerce to Parkside's account, and dispersed from there by mail and wire to AMC-1 and or Ahlheim,   Ahlheim:

(1)  filed  a "Dismissal without Prejudice" memorandum in 13SL-AC27679 on or about October 2, 2013; and,

(2)   filed a release of lien with respect to a lien Parkside had filed against Geivett's condominium in April, 2013.

50. After all the above transactions 'cleared', next in October, 2013, Parkside & AMC-1 demanded Geivett pay a $138 monthly assessment for October, notwithstanding Parkside had just sued him for that monthly assessment.

51. Geivett protested and refused to pay an October monthly assessment *again* as it had been included in Parkside's 13SL-AC27679 suit which Geivett had paid to settle.

52.  In November, 2013, Parkside &AMC-1 demanded Geivett pay a $138 monthly assessment for October and November.

53. Geivett protested and refused to pay a November monthly assessment *again* as it had been included in Parkside's 13SL-AC27679 suit which Geivett had paid to settle.

54. In December, 2013, Parkside &AMC-1 demanded Geivett pay a $138 monthly assessment for October, November, and December, and again Geivett protested and refused to pay.

55.  On or about Dec. 26, 2013, AMC-1 sent a letter via U.S.Mail to Geivett that Parkside would file a lien (attached below) against his condominium for refusing to pay the $138.00 assessments for October, November, and December 2013.

56. On January 9, 2014,  Parkside, by and through  Ahlheim, Allen Seals & AMC-1, filed this Lien against  Geivett's Condominium, total amount $522: **Attachment 8** ,  digitally excerpted below:

8

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

**NOTICE OF LIEN FOR COMMON EXPENSES TO UNIT OWNER FROM THE
EXECUTIVE BOARD OF THE PARKSIDE CONDOMINIUM ASSOCIATION**

| | | | |
|---|---|---|---|
| Property address: | 2303 Yosemite Park Ct.<br>Maryland Heights, MO 63043 | Unit: D (4)   Bldg.: #1 | |
| Owner/Grantor: | Dennis Geivett<br>215 Cedar Tree<br>Ballwin, MO 63011 | Legal: | S17, Twp 46N, R5E in St. Louis County MO<br>Ameling Subdivision Tract A Bldg 1 Unit 4<br>in common elements |
| Date: | December 26, 2013 | Grantee: | Parkside Condominium Assn.<br>3153 Fee Fee Rd., Bridgeton, MO 63044 |

TAKE NOTICE that the Executive Board of Parkside Condominiums claims a lien against your ownership interest in the above-stated unit together with all appurtenances of the unit concerned, including but not limited to the common elements appurtenant thereto, all according to and more particularly described in the DECLARATION OF CONDOMINIUM of Parkside Condominium ("Declaration") and exhibits thereto filed in the office of the Recorder of Deeds of the County of St. Louis, in Book 7853, Page 1260, for delinquent assessments of the proportionate share of common expenses incurred by the Board for the administration, repair and maintenance of the common elements, plus late fees, interest, recording charges and attorney fees in connection therewith, all to the benefit of and for all unit owners.

| | |
|---|---|
| Monthly Assessment Fees | $414.00 |
| Late Fees | 10.00 |
| Lien Recording & Processing Fees | 98.00 |
| Total | $522.00 |

The foregoing information is deemed accurate as of the date of execution of this Notice; *additional sums may accrue after said date.*

PARKSIDE CONDOMINIUM ASSOCIATION

By: _____
Allan J. Seals, Authorized Representative

STATE OF MISSOURI    )
COUNTY OF ST. LOUIS  )  SS.

On this 26th day of December, 2013, before me personally appeared Allan J. Seals, Authorized Representative, known to

57. Next, on January 14, 2014, Ahlheim sent a letter to Geivett via U.S. Mail,  pdf inserted below, particularly including the statement, "*Any suit would be for the amount now owed, plus the amount due for the rest of 2014, as well as Court Costs, and our attorneys fees.*" :**Attachment # 9.**

9

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

# AHLHEIM & DORSEY, LLC

### Attorneys At Law

2209 First Capitol Drive · St. Charles, Missouri 63301
(636) 940-8000 · (636) 940-8889 Facsimile

Edward C. Ahlheim (Retired)
Richard P. Dorsey
Stephen P. Ahlheim
Mary Elizabeth Dorsey

www.ahlheimdorsey.com

January 14, 2014

Dennis Geivett
2303D Yosemite Park Court
Maryland Heights, MO 63043

RE:    Parkside Condominiums Association

Dear Mr. Geivett:

As you are aware my office represents Parkside Condominiums. According to our records, you are seriously delinquent in the payment of your condo fees. As of to date your account balance is $890.00, of which $690.00 is for your regular assessment, late fees and now $200.00 for legal fees.

If you wish to pay this amount, please contact me within seven (7) days of the date of this letter. We will accept payment in the form of cash, check or money order. Please make any check or money order payable to Parkside Condominiums and mail it to our office.

Unless you notify us in writing of a dispute on this amount within 30 days of the date of this letter, we will assume the debt is valid. If you do notify us of a dispute, we will obtain verification of the debt and mail it to you.

We may proceed with a lawsuit against you without waiting for 30 days if so requested by our client. Any suit would be for the amount now owed, plus the amount due for the rest of 2014, as well as Court costs and our attorney's fees. A judgment may result in your vehicles being seized and your wages and bank accounts being garnished or other methods of collection. This letter is an attempt to collect the debt and any information obtained will be used for that purpose.

Finally, because this account has been turned over to my office for collection, please do not contact Parkside Condominiums property management office. Instead, please direct all inquiries, in writing, to my attention.

Very truly yours,

STEPHEN P. AHLHEIM
Attorney at Law

cc:    Association Management

EXHIBIT
7

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

58. That Ahlheim letter was a "form" letter where the composition was the same as a letter Ahlheim sent to Geivett before filing the 13SL lawsuit, and accordingly Geivett reasonably deduces and alleges that Ahlheim sent, via U.S. Mail, this form letter to Parkside debtors (substituting their particular name, debt amounts and dates) but also with a fabricated -false-inflated *"plus the amount due for the rest of the (year)."*, scheme. **Attachment 10** is Ahlheim's form letter sent to Geivett in 2013, which Geivett did not receive because he did not reside at the address on that form letter.

**RACKETEER INFLUENCED CORRUPT ORGANIZATIONS ACT  - "RICO"**

59.  With respect to the statement, "*Any suit would be for the amount now owed, plus the amount due for the rest of 2014, as well as Court Costs, and our attorneys fees.*", within Ahlheim's letters to Geivett, the following United States statutes comprising actionable elements of  Geivett's  RICO claims are relevant, beginning with an overview via the  "Syllabus" in **Sedima, S.P.R.L. v. Imrex Co., Inc**., 473 U.S. 479,105 S.Ct. 3275, 87 L.Ed.2d 346, (1985) which summarizes as follows:

*479 Syllabus*

> The Racketeer Influenced and Corrupt Organizations Act (RICO), 18 U.S.C. §§ 1961–1968, which is directed at "racketeering activity"—defined in § 1961(1) to encompass, inter alia, acts "indictable" under specific federal criminal provisions, including mail and wire fraud—provides in § 1964(c) for a private civil action to recover treble damages by any person injured in his business or property "by reason of a violation of section 1962." Section 1962(c) prohibits conducting or participating in the conduct of an enterprise "through a pattern of racketeering activity."

60. The "Mail Fraud" statute is **18 U.S.C. § 1341 - Frauds and swindles**, which has stated throughout 2012 to the present:

> LII U.S. Code Title 18 PART I CHAPTER 63 §1341
> Title Section
> **18 U.S. Code § 1341 - Frauds and swindles**

"<u>Whoever, having devised or intending to devise any scheme or artifice to defraud</u>, or <u>for obtaining money or property by means of false or fraudulent pretenses, representations,</u> or promises, or to sell, dispose of, loan, exchange, alter, give away, distribute, supply, or furnish or procure for unlawful use any counterfeit or spurious coin, obligation, security, or other article, or anything represented to be or intimated or held out to be such counterfeit or spurious article, <u>for the purpose of executing such scheme or artifice or</u> **attempting so to do**<u>, places in any post office or authorized depository for mail matter, any matter or thing whatever to be sent or delivered by the Postal Service,</u> or deposits or causes to be deposited any matter or thing whatever to be sent or delivered by any private or commercial interstate carrier, or takes or receives therefrom, any such matter or thing, or knowingly causes to be delivered by mail or such carrier according to the direction thereon, or at the place at which it is directed to be delivered by the person to whom it is addressed, <u>any such matter or thing</u>, shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.  (underscored emphasis by Geivett)

61. The "Wire Fraud" statute is **18 U.S.C.§ 1343 - Fraud by wire, radio, or television**, which has stated throughout 2012 to the present:

<u>Whoever, having devised or intending to devise any scheme or artifice to defraud</u>, or <u>for obtaining money or property by means of false or fraudulent pretenses, representations,</u> or promises, <u>transmits or causes to be transmitted by means of wire</u>, radio, or television communication in interstate or foreign commerce, <u>any writings</u>, signs, signals, pictures, or sounds <u>for the purpose of executing such scheme or artifice,</u> shall be fined under this title or imprisoned not more than 20 years, or both. If the violation occurs in relation to, or involving any benefit authorized, transported, transmitted, transferred, disbursed, or paid in connection with, a presidentially declared major disaster or emergency (as those terms are defined in section 102 of the Robert T. Stafford Disaster Relief and Emergency Assistance Act (42 U.S.C. 5122)), or affects a financial institution, such person

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both.

62. The phrase "scheme or artifice to defraud" has been defined throughout 2012 to the present  under **18 U.S. Code § 1346 - Definition of "scheme or artifice to defraud"**

> For the purposes of this chapter, the term "scheme or artifice to defraud" includes a scheme or artifice to deprive another of the intangible right of honest services."

63.  **18 U.S. Code § 1349 - Attempt and conspiracy** has stated throughout 2012 to the present:

> "Any person who attempts or conspires to commit any offense under this chapter shall be subject to the same penalties as those prescribed for the offense, the commission of which was the object of the attempt or conspiracy."

64. The Anti-Racketeering Act, or Hobbs Act, 18 U.S.C.A. § 1951, is a broadly drawn statute designed to protect interstate commerce against a wide range of interference by racketeering, blackmail, extortion, violence, and threats, (Am. Jur. 2d, Extortion, Blackmail, and Threats §§ 63, 65,)   and throughout 2012 to the present it stated:

> **18 U.S. Code § 1951 - Interference with commerce by threats or violence**
> (a) Whoever in any way or degree obstructs, delays, or affects commerce or the movement of any article or commodity in commerce, by robbery or **extortion or attempts or conspires so to do**, or commits or threatens physical violence to any person **or property in furtherance of a plan** or purpose to do anything in violation of this section shall be fined under this title or imprisoned not more than twenty years, or both.
> (b) As used in this section—
> (1) The term **"robbery"** means the unlawful taking or obtaining of personal property from the person or in the presence of another, against his will, by means of actual or threatened force, or violence, or fear of injury, immediate or future, to

13

his person or property, or property in his custody or possession, or the person or property of a relative or member of his family or of anyone in his company at the time of the taking or obtaining.

(2) The term **"extortion"** means the obtaining of property from another, with his consent, induced by wrongful use of actual or threatened force, violence, **or fear**, or under color of official right.

(3) The term "commerce" means commerce within the District of Columbia, or any Territory or Possession of the United States; all commerce between any point in a State, Territory, Possession, or the District of Columbia and any point outside thereof; all commerce between points within the same State through any place outside such State; and all other commerce over which the United States has jurisdiction.

(c) This section shall not be construed to repeal, modify or affect section 17 of Title 15, sections 52, 101–115, 151–166 of Title 29 or sections 151–188 of Title 45.

65. Ahlheim placed in the U.S. Mail, the form letters to Geivett ,above _for the purpose of executing a scheme or artifice to defraud Geivett or attempting so to do_, _or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises"_,as the letters contained  false statements of debt (**in bold)**:

"_Any suit would be for the amount you now owe_, **_plus the amount for the rest of 2013"_**,   in the 2013 letter; and ,

"_Any suit would be for the amount you now owe_, **_plus the amount for the rest of 2014"_**, in the 2014 letter, when defendants had devised that scheme to include fabricated false debts - the amounts for the rest of a calendar year - in letters to and lawsuits against delinquent condominium unit owners,  such that mailing those letters was an attempt to execute that fabricated debt scheme  per 18 U.S.C. § 1341 Mail Fraud and **§ 1349** "Attempt" statutes, above.

66.  As a direct proximate result of the Ahlheim+AMC-1+Parkside lawsuit containing that 'rest of the year due' fraud scheme, when he received Parkside's 13SL lawsuit, Geivett believed he owed Parkside'  Board had declared his dues for September,

14

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

October, November, and December immediately due and payable, and he f**eared** that Parkside had the power to convince a Court to adjudge that he pay that amount, enforceable by judicial execution,  so on Sept 11-12, 2013, Geivett *agreed* to pay $2065.50 to settle Parkside's 13SL "Petition for Assessments" lawsuit.

67. When Geivett  *paid* $2065.50 via cashier's check payable to Parkside, he was a victim of the scheme that defendants had devised to defraud by means of false pretenses stated in Parkside's 13SL Petition, paragraph 7:

> "¶ 7. The plaintiff via the board and pursuant to its authority under the declaration of Parkside further declared the remaining unpaid annual assessment for 2013, $690.00 (August through December) immediately due and payable due to the above outstanding balance.".

68.  Ahlheim intended that letter to frighten, scare, intimidate, manipulate, harass coerce and cause debtors, particularly Geivett, to experience distress, in turn to scare Geivett to paying  -  "as debts"  - inflated charges and alleged indebtedness that Parkside could not prove existed under proper application of rules of evidence.

69.  Next,  in furtherance of  a *scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises"*, in the aftermath of Ahlheim's letter to Geivett on  January 14, 2014, on January 30,2014, Ulah Decker emailed Cindy Banta at AMC-1, an affidavit that falsely asserted Geivett owed Parkside $2408.00 (a sum total that included the false debt for the remainder of 2014) along with a request that Alan Seals, as manager of AMC-1, sign and then return the affidavit to her in two ways:

(1) email -a wire communication, which was unlawful under 18 U.S.C. 1343; and

(2) the original via U.S. Mail, which was unlawful unddvc furtherance of the fraud scheme is (labelled Exh. JJJJ pg. 1-2 as Deft. Geivett's Exhibit inventory  during discovery in Parkside's 14SL suit against Geivett), **ATTACHMENT 11:**

15

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

**◪JUNO Message Center**

From: Ulah <udr@ahlheimdorsey.com>

To: Cindy Lou <association3@juno.com>

Sent: Thu, Jan 30, 2014 10:19 AM

Subject: Parkside v. Geivett

Parkside v. Geivet... (33KB)

Please have Allan sign Affidavit, e-mail me a copy and mail the original.

Thanks,
Ulah
–
Ulah Decker
Ahlheim & Dorsey, LLC
2209 First Capitol Drive
St. Charles, Missouri 63301
636-940-8000
636-940-8889 (Fax)

70. In response to Decker's email, on or about January 30, 2014, Alan Seals signed that affidavit, and then AMC-1:

(1) "wire" communicated by email to Ahlheim's office a scan of his signed affidavit as Decker had requested: and

(2) sent the original signed Affidavit to Ahlheim's office via U.S. Mail.

71. In requesting, sending , completing and returning Seals' false affidavit in anticipation of incorporating that affidavit into Parkside's suit against Geivett, Ahlheim and Seals and AMC-1 violated the Mail Fraud and Wire Fraud statutes above, and thereby committed "predicate" crimes satisfying those criteria for establishing plaintiff's RICO claim.

72. On January 31, 2014, Ahlheim filed Parkside's "Petition For Assessments" debt collection suit against Geivett, Cause No. 14SL-AC03525, that incorporated Ahlheim's and Seals' affidavits, all in furtherance of their *scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses,*

16

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

*representations, or promises"* Geivett:  **Attachment # 12** is that Parkside 4SL-AC03525 Petition**.**

73.  By including Seal's affidavit that had been transmitted by both U.S. Mail and internet-wire-  in Parkside's 14SL-AC03525 Petition for Assessments against Geivett, and then filing that Petition in Court coupled with directions for service of process on Geivett, Ahlheim, AMC-1, and Parkside coordinated the commission, or attempted commission, or conspiracy to commit, by means of transmission by US Mail or wire,  a scheme to obtain money from Geivett by deception and false representation in violation of RICO.

74.  Parkside's 14SL-AC03525 "Petition for Assessments" and Parkside's 13SL-AC27679 "Petition for Assessments" followed an 8 paragraph pattern and practice, in which paragraphs 1 through 4 were identical in both suits as follows:

" **PETITION FOR ASSESSMENTS**

Comes now Plaintiff and of [sic] its [sic] cause of action against defendant, DENNIS GEIVETT state [sic] to the Court as follows:

1.      That Plaintiff is a Missouri not-for-profit corporation consisting of condominium complex organized under the Missouri uniform condominium act which is located in the County of St. Louis state of Missouri.

2.      That Defendant is an individual who is the owner of the unit known and number as 2303 Yosemite Park Court number D Maryland Heights Missouri which is part of the Parkside condominiums and which is located in the county of St. Louis state of Missouri.

3.      That Defendant's Unit and every other shed units of the Parkside condominiums are encumbered by the declaration of condominium and bylaws recorded in book 7853 pages 2260/2291 of the recorder of deeds of St. Louis County Missouri parentheses here after "the declaration". A copy of said Declaration is attached hereto and is incorporated by reference as a fully set for herein.

17

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

4.      That pursuant to the Declaration, Plaintiff, via its managing body known as the Board of Managers is authorized to Levey an [sic] monthly assessment against each condominium, for common expenses associated with maintenance repair or replacement of the condominiums which shall be the personal obligation of the owner and which may be recoverable by means of filing suit to recover the assessment together with late fees reasonable attorney fees and cost expended therein."

75. In Parkside's 14SL-AC03525 suit, Parkside did NOT attach a copy of the Declaration as Parkside had alleged in 3, just as Parkside had NOT attached a copy of the Declaration in Parkside's 13SL suit.

76.  Parkside's paragraphs 5, 6, 7, and 8 were composed similarly in the two suits, with only the dates and total amounts substituted in the 14SL-AC03525 pleading, those substitutions in bold in the paragraphs as follows:

5.      That Plaintiff, via the Board, levied against Defendant's Unit an annual fee, payable monthly the sum of $138 for **2014**, together with late fees of $10.00 and carport fee of $25.00 per month, due on the 1st of each month.

6.      That Defendant has failed and refused to pay monthly assessments, late fees and carport fees, as of **January 14, 2014**, in the amount of **$890.00**, although demand had been made for payment.

7.      That Plaintiff via the Board and pursuant to its authority under the Declaration of Parkside, <u>further declared the remaining unpaid annual assessment for **2014**, **$1518.00 (February through December)** immediately due and payable due to the above outstanding balance</u>.

8.      That the Declaration provides for reasonable attorney fees and costs to Plaintiff.

WHEREFORE, Plaintiff requests judgment be entered against Defendant for unpaid assessments and late fees and for the remaining balance of assessments for **2014** all in the amount of **$2,408,00**, for additional late fees as may accrue through

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

77.   In Parkside's 14SL-AC03525  lawsuit against Geivett, Parkside did NOT plead "all conditions were satisfied and fulfilled",  violating Rule 55.16 as Parkside had violated that rule in Parkside's 13SL-AC27679 suit.

78. Parkside was not required to attach any affidavit to any "Petition for Assessment" suit to collect allegedly delinquent condominium association dues against Geivett, or against any allegedly delinquent condominium unit owner.

79. Notwithstanding the absence of any legal requirement to attach one or more affidavits to any "Petition for Assessment" breach of contract debt collect suit , Parkside attached  Ahlheim's affidavit, digitally excerpted here:

STATE OF MISSOURI              )
                               )     SS.
COUNTY OF ST. CHARLES          )

COMES NOW, Stephen P. Ahlheim, being duly sworn upon his oath, states that the foregoing is true and correct according to his best knowledge, information and belief.

_____
Attorney and Agent for Plaintiff

Subscribed and sworn to before me this 27th day of January, 2014.



ICHELLE L. FRESE
Notary Public—Notary Seal
STATE OF MISSOURI

_____
Michelle L. Frese
Notary Public

80.   Geivett digitally next excerpts the Affidavit that Allen Seals that had been sent, and returned by both  email (wire) and U.S. Mail that Parkside attached to its' 14SL-AC03525 Petition:

19

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

AFFIDAVIT

On this 30 day of January, 2014, I, Allan J. Seals of Association Management Corp., do state that I am the Property Manager of Parkside Condominiums, that I am familiar with the official payment ledger/records of Parkside Condominiums in that we collect all payments on their behalf, that I am of sound mind, that I am over the age of eighteen (18) years and that the following is true and accurate according to the best of my knowledge, information and belief:

1. The principal, late fees, cost balance of Dennis Geivett owner of 2303D Yosemite Park Court, Maryland Heights, Missouri 63043, is now $2,408.00.

2. Attorney fees to be supplied by Parkside Condominium's Attorney, Stephen P. Ahlheim.

ASSOCIATION MANAGEMENT CORP.

By: _____
ALLAN J. SEALS, Property Manager

81. Parkside's lawyer intended for the false allegation, "remaining unpaid annual assessment for **2014**, **$1518.00 (February through December)** immediately due and payable" , and total debt of $2,408.00 inclusive of that *'remaining unpaid annual assessment',* supported by affidavits, and a claim for additional attorneys fees to be harassing, stressful and emotionally upsetting for Geivett, so as to (1) deceive Geivett, and (2) motivate Geivett to give in and pay without contesting the suit as their scheme had been successful repeatedly and without fail to that point in time *vis-a-vis* condominium unit debtors in St Louis County Circuit Court, including as to Geivett in Parkside's 13SL lawsuit.

82. Parkside's management company, AMC-1 and its' manager Alan Seals, intended for the false allegation, "remaining unpaid annual assessment for **2014**, **$1518.00 (February through December)** immediately due and payable" , and total debt of $2,408.00 inclusive of that *'remaining unpaid annual assessment',* supported by affidavits, and a claim for additional attorneys fees to be harassing, stressful and

20

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

emotionally upsetting for Geivett, so as to (1) deceive Geivett, and (2) motivate Geivett to give in and pay without contesting the suit as their scheme had repeatedly succeeded vis-a-vis other Parkside condominium unit debtors in St Louis County Circuit Court before, including as to Geivett in Parkside's 13SL lawsuit.

83.  Parkside intended for the false allegation, "remaining unpaid annual assessment for **2014**, **$1518.00 (February through December)** immediately due and payable" , and total debt of $2,408.00 inclusive of that *'remaining unpaid annual assessment',* supported by affidavits, and a claim for additional attorneys fees to be harassing, stressful and emotionally upsetting for Geivett, so as to (1) deceive Geivett, and (2) motivate Geivett to give in and pay without contesting the suit as their scheme had repeatedly succeeded vis-a-vis other Parkside condominium unit debtors in St Louis County Circuit Court before, including as to Geivett in Parkside's 13SL lawsuit.

84.  On or about February 6, 2014, Geivett called Ahlheim's office and talked with Ulah Decker, telling her he was angered, disturbed and harassed by Parkside's 14Sl-AC03525 lawsuit, just as Parkside, AMC-1, and Ahlheim had intended him to be, particularly in the context of having paid Parkside's 13SL  suit and received the January 2014 filing of another lien against his condominium.

85.   On or about February 7, 2014, as a direct result of Parkside's lien and lawsuit and the actions of Parkside, AMC-1, and Parkside's attorneys as alleged above, Geivett contracted with attorneys at $250.00 per hour (initially) to represent him vis-a-vis Parkside's 14SL-AC03525 suit and to combat the defendants' fraud scheme aimed at Geivett therein,  an expense all to his injury and damage necessitated to combat the attempted perpetration of fraud by lawsuit, which has continued for the past 10 years, and remains ongoing.

86.  The background allegations in paragraphs 1,2,3,4,and 5, in Parkside's two lawsuits against Geivett pertaining to the Condominium Association, Geivett's unit ownership, Declaration, and Bylaws, were uncontroversial and uncontested.

21

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

87. Notwithstanding  Parkside withheld attaching the Declaration, Geivett's attorneys deduced the Uniform Condominium Act of Missouri, V.A.M.S. 448.1-010 through 448.4-120 governed Parkside's and Geivett's condominium relationship.

88.   At all times alleged herein, V.A.M.S. §448.3-118  stated:

" **448.3-118.  Association records**. — The association shall keep financial records sufficiently detailed to enable the association to comply with section 448.4-107.  All financial and other records shall be made reasonably available for examination by any unit owner and his authorized agents."

89.  On or about February 12, 2014, Geivett called Ahlheim's office, Decker took the call, and  Geivett requested his current ledger (ala RSMo 448.3-118 above) and a potential settlement amount.

90.   On February 12, 2014, Ulah Decker sent a cover letter and "current" ledger, **Attachment 13, excerpted as follows,** particularly including the statement, "..enclsoed[sic] please find a ledger showing <u>what is owed on your account as of today</u>, February 12,2014.

Dennis Geivett
215 Cedar Tree
Ballwin, MO 63011

RE:  **Parkside Condominium Association**
      **2303D Yosemite Park Court**

Dear Mr. Geivett:

In accordance with our telephone conversation of today, enclsoed please find a ledger showing what is owed on your account as of today, February 12, 2014.

This letter is an attempt to collect a debt and any information obtained will be used for that purpose.

Sincerely,

ULAH DECKER
Legal Assistant

91.   The "Total Charges" & Ending Balance - $838.00 -  included  $98.00 lien charges, $138 assessment for February and a $10 February "late fee", and consequently <u>as of January 31, 2014 when Parkside filed suit</u>, the "past due assessments" - (assuming that Parkside had properly enacted a budget)- totaled $592.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

```
Run Date:  2/12/2014          015--PARKSIDE CONDOMINIUMS              Page:  1
                                    Statements
                         For the period  1/01/2013 to  2/12/2014


                    ACCT    : 15016
                    Dennis Geivett
                    P1-04 2303D YPC
                    215 Cedar Tree
                    Ballwin MO 63011

    Date    Type CodeReference  Check  Description                      Amount
  ---------- --- --- ---------- -----  -----------------------------  ------------
                                       Beginning Balance                 0.00

  10/01/2013 CHG  MNT                  Assessment Fee                   138.00
  11/01/2013 CHG  MNT                  Assessment Fee                   138.00
  12/01/2013 CHG  MNT                  Assessment Fee                   138.00
  12/11/2013 CHG  LFE                  December Late Fee                 10.00
   1/01/2014 CHG  MNT                  Assessment Fee                   138.00
   1/01/2014 CHG  LFE                  Nov & Dec. 2013 LFE               20.00
   1/11/2014 CHG  LFE                  January Late Fee                  10.00
   1/14/2014 CHG  LIN                  Lien Filing Fee                   48.00
   1/14/2014 CHG  LIN                  Lien Processing Fee               50.00
   2/01/2014 CHG  MNT                  Assessment Fee                   138.00
   2/11/2014 CHG  LFE                  February Late Fee                 10.00

                                       Total Charges                   838.00
                                                                     -------------
                                       Ending Balance                  838.00

                    1/14/14            Demand letter                   200.00
                    1/27/14            Lawsuit                         200.00
                                       Filing Fee                       45.00
                    2/6/14             Discuss file and provide payoff 100.00
                    2/12/14            Telephone discussion with Mr.
                                       Geivett and provide ledger       50.00

                                       Total due as of 2/12/14        1433.00
```

92. In that 'current due ledger' there was no charge for "immediately due $1,518 for the remainder of 2014 (February through December)" as Parkside had alleged in the 14SL Petition.

93.  Whereas $532 was the most that Parkside could lawfully assert was "due" in the January 31, 2014 Petition,  as part of the racketeering enterprise among Parkside, Ahlheim,  and AMC-1, Ahlheim and Seals both swore the debt was $2408, approximately 4.5 times more than any legitimate debt could be included.

94.  In the enterprise of coordinating Parkside's lawsuit against Geivett: (1) Parkside was the creditor having the right to the alleged debt vis-a-vis Geivett, owner of common elements of the condominium complex as to which Geivett had rights, principal

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

and employer of AMC-1 and attorney Ahlheim; (2) AMC-1 was the condominium manager orchestrating condominium operations including collecting debts, receiving debt payments, accounting therefore, distributing the proceeds in interstate commerce to enterprise participants, and providing or physically obstructing Geivett from common elements as to which he had ownership rights, all as an agent of Parkside; (3) Ahlheim was the attorney responsible for filing and prosecuting the lien and lawsuit  - to the extent either was valid in the face of zealous advocacy mindful of the rules of evidence.

95. Geivett was a "personal consumer" with respect to Parkside monthly association dues indebtedness.

96. As a personal consumer with respect to payment of condominium association monthly dues debts, Geivett's rights and protections  vis-a-vis Ahlheim's debt collection conduct was subject to governance by, and under, the Fair Debt Collections Practices Act 15 U.S.C.A. §§1692 -1692o, 15USCA 1692a(6) (hereafter FDCPA); *Heintz v. Jenkins*, 514 U.S. 291,115 S.Ct. 1489, 131 L.Ed.2d 395, 63 USLW 4266 (1995); *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 130 S.Ct. 1605, 176 L.Ed.2d 519, (2010); *McDermott v. Marcus, Errico, Emmer, & Brooks, P.C*.,911 F.Supp.2d 1 (D. Mass. 2012); *McDermott v. Marcus, Errico, Emmer, & Brooks, P.C* ,775. F.3d 109(C.A.1  2014 )(The Hon. David H. Souter, Associate Justice (Ret.) of the Supreme Court of the United States, sitting by designation.); and *Morgan v. Vogler Law Firm, P.C.*, 2017 WL 4387351 (E.D.Mo.2017)(Judge Stephen Limbaugh, Jr.)( quoting Section 15.U.S.C.§1692d-f—filing a debt collection lawsuit for the unfair, harassing, and abusive purpose of obtaining either a default or consent judgment on a debt for which defendants had neither intent nor means to prove ).

96.  **Attachment # 14** is  *Mayfield v. Asta Funding, Inc.et al*, 95 F. Supp. 3d 685 - (S.D .N.Y 2015) as preface to alleging hereafter with particularity the "enterprise" coordination of the defendants in furthering the underlying fraud scheme  that had succeeded in causing Geivett to pay $2065.50 to settle Parkside's 13SL suit, and as to

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

which Geivett hired attorneys to combat that fraud scheme, and all coordinated and related enterprise obstructions and harassments - extortions schemes- related to making Geivett pay the fraud scheme in  Parkside's 14SL-AC0352, extortions that persisted through the duration of Parkside's lawsuit, and to the present.

98.  On or about May-June 2014, AMC succeeded and replaced AMC-1 as Parkside's Condominium manager.

99.   In the process of succeeding and replacing AMC-1 as the manager of Parkside condominium,  defendant AMC:

- conducted business from the same office address that AMC-1 had conducted business;

-  assumed  the work, functions and responsibilities that AMC-1 had been doing for Parkside as AMC-1 stated in the original " Welcome" letter to Geivett, attachment #1, August 7, 2012;

- employed Alan Seals as the manager, as he had been at AMC-1;

- adopted  the work AMC-1 had done furthering the RICO enterprise with Parkside and Ahlheim, PARTICULARLY AGREEING/CONSPIRING TO MAINTAIN THE ONGOING ATTEMPT TO EXECUTE THE SCHEME AGAINST GEIVETT IN 14SL

- ;AC0352;

- employed people who had worked for AMC-1 during the time Geivett owned the condominium beginning in 2012;

-  employed people -particularly Cindy Banta - who knew Ahlheim & Dorsey, Steve Ahlheim, and Ulah Decker  and knew what they had been doing in representing Parkside, particularly the pattern and practice of lien filings and lawsuits regarding delinquent condominium dues   assessments from unit owners, particularly Geivett;

- of Parkside's  liens filed against properties, including Geivett's;

- knew of Seals' Affidavit January 30, 2014 and coordinating that and similar affidavits in cooperation and coordination with Ahlheim on behalf of Parkside;

25

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

- employed people who knew of the litigation scheme of false and fraudulent amounts of debt alleged in suits, as alleged herein, particularly against Geivett, and participated in providing information regarding and enabling the furtherance of that fraud scheme.

- of the success of the litigation scheme in the small claims Associate Circuit Court in St. Louis County in prosecuting fabricated debt claims against debtors, who were almost always unrepresented, in agreeing to pay in the face of the fear that the court could make them pay the amounts alleged;

100.  On behalf of Parkside, once AMC succeeded and replaced AMC-1, AMC carried on, maintained, and joined everything Seals and AMC-1 had done to further the fraud scheme alleged above generally, and as it had been aimed at Geivett in the 2013 and 2014 liens, correspondence, and lawsuits.

101.  On or  about August 25, 2014,  in 14SL-AC0352 the Court granted Geivett's attorneys' motions to join Ahlheim & Dorsey and Stephen Ahlheim as co-counterclaim defendants (3rd party) based on the grounds that the Fair Debt Collection Act  provides strict liability against Ahlheim as debt collector vis-a-vis  Geivett (consumer debtor) pursuant to 15 U.S.C §§ 1692 et seq. …  "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." ; and

(1) the $25 car port fee allegation was inconsistent with the $522.00 lien January 9, 2014, the cover letter January 14, 2014, and the ledger provided February  12, 2014, and false;

(2) the $890 past due allegation was inconsistent with the $522.00 lien January 9, 2014, the cover letter January 14, 2014, and the ledger provided February  12, 2014, and false;

(3) the allegations,

> 7.    That Plaintiff via the Board and pursuant to its authority under the Declaration of Parkside, further declared the remaining unpaid annual assessment for **2014, $1518.00 (February through December)** immediately due and payable due to the above outstanding balance….

26

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

> WHEREFORE, Plaintiff requests judgment be entered against Defendant for unpaid assessments and late fees and for the remaining balance of assessments for **2014** all in the amount of **$2,408,00**, for additional late fees as may accrue through

were inconsistent with the lien January 9, 2014, the cover letter January 14, 2014, and the ledger provided February 12, 2014, and misleading or false.

102. After AMC succeeded and replaced AMC-1  manager of Parkside, and in the face of the Answer + Counterclaim Geivett filed,  Parkside filed a "pdf" digital **Amended Petition in the 14SL-AC03525** suit, by  email - wire - through the internet in accordance with the requirements of the Missouri Court system computerization, **Attachment #15.**

103. Parkside's Amended Petition did not allege a carport debt, and did not attach Seals' affidavit, but otherwise re-alleged the other false and inflated debt claims, particularly

> "7.      That Plaintiff via the Board and pursuant to its authority under the Declaration of Parkside, <u>further declared the remaining unpaid annual assessment for **2014**, **$1518.00 (February through December)** immediately due and payable due to the above outstanding balance</u>….

> WHEREFORE, Plaintiff requests judgment be entered against Defendant for unpaid assessments and late fees and for the remaining balance of assessments for **2014** all in the amount of **$2,408,00;** for additional assessments and late fees as may accrue through date of judgment; for reasonable attorneys fees and costs expended herein; and for such further relief and remedy as may be deemed just and appropriate under the circumstances.",

in furtherance of  defendants' attempted RICO *scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations, or promises"*.

104. In turn,  on or about Oct. 24, 2014, the Missouri Court System emailed Geivett's counsel notice of acceptance of Parkside's Amended Petition filing, inviting

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

internet access to the pleading for Geivett and his counsel - all "wire" communications and "Wire Fraud" transmissions of Parkside's in violation of **18 U.S.C.§ 1343** .

105.  Geivett resided in Florida in October 2014 when the court accepted Parkside's Amended Petition, and Geivett and his counsel used the internet to the Missouri  Court's website -wire -to access Parkside's  Amended Petition, another RICO predicate act furthering defendants fraud scheme.

5.      That Plaintiff, via the Board, levied against Defendant's Unit an annual fee, payable monthly the sum of $138 for **2014**, together with late fees of $10.00, due on the 1st of each month.

6.      That Defendant has failed and refused to pay monthly assessments, late fees and carport fees, as of **January 14, 2014**, in the amount of **$890.00**, although demand had been made for payment.

7.      That Plaintiff via the Board and pursuant to its authority under the Declaration of Parkside, <u>further declared the remaining unpaid annual assessment for **2014, $1518.00 (February through December)** immediately due and payable due to the above outstanding balance</u>.

8.      That the Declaration provides for reasonable attorney fees and costs to Plaintiff.

WHEREFORE, Plaintiff requests judgment be entered against Defendant for unpaid assessments and late fees and for the remaining balance of assessments for **2014** all in the amount of **$2,408,00;** for additional assessments and late fees as may accrue through date of judgment; for reasonable attorneys fees and costs expended herein; and for such further relief and remedy as may be deemed just and appropriate under the circumstances."

## CRIMES BY DEFENDANTS WITHIN THEIR RACKETEER ENTERPRISE

106.  At all times alleged herein, RSMo §575.050 (§1.070 RSMo citation) has stated in relevant part as follows:

**575.050.  False affidavit — penalties**. — 1.  A person commits the offense of <u>making a false affidavit if,</u> with purpose to mislead any person, he or she, in any affidavit, swears falsely to a fact which is material to the purpose for which said affidavit is made.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

2.  The provisions of subsections 2 and 3 of section 575.040 shall apply to prosecutions under subsection 1 of this section.

3.  It is a defense to a prosecution under subsection 1 of this section that the person retracted the false statement by affidavit or testimony but this defense shall not apply if the retraction was made after:

(1)  The falsity of the statement was exposed; or

(2)  Any person took substantial action in reliance on the statement.

4.  The defendant shall have the burden of injecting the issue of retraction under subsection 3 of this section.

5.  The offense of making a false affidavit is a class C misdemeanor, unless done for the purpose of misleading a public servant in the performance of his or her duty, in which case it is a class A misdemeanor.

107.  When Seals executed his Affidavit Jan.  30, 2014, he swore falsely  that Geivett's debt was $2408.00, a summation of false debt allegations in Parkside's Petition, which was material to the purpose for which Seals -AMC-1 manager made that affidavit on behalf of Parkside, to wit to collect  $2408 from Geivett when that was an inflated , fabricated and false amount, and part of a pattern and practice fraud scheme.

108. When Ahlheim executed his Affidavit Jan.  30, 2014, he swore falsely  that Geivett's debt was $2408.00, a summation of false debt allegations in Parkside's Petition, which was material to the purpose for which Ahlheim made that affidavit, to wit to collect  $2408.00 from Geivett when that was an inflated fabricated and false amount, and a fraud scheme.

109. Ultimately Seals and Ahlheim intended to mislead both Geivett and public servants,  court Judges, in connection with foreseeable adoption and approval of the Petition, and adjudication of the debt and award of attorneys fees in the context of the small claims debt collection  St. Louis County Associate Circuit Court "bulk docket" where litigants frequently defaulted, and appeared unrepresented confession of amounts without knowing the truth.

29

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

110. On January 31, 2014, Ahlheim and Seals, on behalf of Parkside in furthering the fraud scheme committed class D or C felonies *filing* false documents under **RSMo §570.095**, stating in relevant portions as follows, (<u>underscoring</u> **emphasis** by Geivett):

" **570.095.  Filing false documents, offense of, elements** — penalty, enhancement — restitution, when — system to log suspected fraudulent documents, procedure. — 1.  <u>**A person commits the offense of filing false documents if**</u>:

(1)  **With the intent to defraud, deceive, harass, alarm, or negatively impact financially, or in such a manner reasonably calculated to deceive, defraud, harass, alarm, or negatively impact financially, he or she files, causes to be filed** <u>or recorded, or attempts to file or record, creates,</u> uses as genuine, transfers or has transferred, presents, **or prepares with knowledge or belief that it will be filed,** <u>presented, recorded, or transferred to</u> the secretary of state or the secretary's designee, to the recorder of deeds of any county or city not within a county or the recorder's designee, <u>to any municipal, county, district,</u> **or state government entity, division, agency, or office,** or to any credit bureau or financial institution **any of the following types of documents:**

(a)  <u>Common law lien;</u>
(b)  Uniform commercial code filing or record;
(c)  **<u>Real property recording</u>**;
(d)  Financing statement;
(e)  Contract;
(f)  Warranty, special, or quitclaim deed;
(g)  Quiet title claim or action;
(h)  Deed in lieu of foreclosure;
(i)  **<u>Legal affidavit</u>**;
(j)  **<u>Legal process</u>**;
(k)  Legal summons;
(l)  Bills and due bills;
(m)  Criminal charging documents or materially false criminal charging documents;
(n)  **<u>Any other document not stated in this subdivision that is related to real property;</u>** or
(o)  Any state, county, district, federal, municipal, credit bureau, or financial institution form or document; **and**

30

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

**(2)  Such document listed under subdivision (1) of this subsection contains materially false information; is fraudulent;** is a forgery, as defined under section 570.090; lacks the consent of all parties listed in a document that requires mutual consent; or is invalid under Missouri law.

2.  **Filing false documents under this section is a class D felony for the first offense except the following circumstances shall be a class C felony**:

(1)  The defendant has been previously found guilty or pleaded guilty to a violation of this section;

…

(3)  The victim or named party in the matter is a judge or magistrate of:

(a)  Any court or division of the court in this or any other state or an employee thereof; or

(b)  Any court system of the United States or is an employee thereof;

….

3.  For a penalty enhancement as described under subsection 2 of this section to apply, the occupation of the victim or named party shall be material to the subject matter of the document or documents filed…

…

7.  To petition for a judicial review of a filing or record that is believed to be fraudulent, false, misleading, forged, or contains materially false information, a petitioner may file a probable cause statement that delineates the basis for the belief that the filing or record is materially false, contains materially false information, is a forgery, is fraudulent, or is misleading.  This probable cause statement shall be filed in the associate or circuit court of the county in which the original filing or record was transferred, received, or recorded.

8.  A filed petition under this section shall have an initial hearing date within twenty business days of the date the petition is filed with the court.  A court ruling of invalid shall be evidence that the original filing or record was not accurate, true, or correct.  A court ruling of invalid shall be retained or recorded at the original receiving entity.  The receiving entity shall waive all filing or recording fees associated with the filing or recording of the court ruling document in this subsection.  Such ruling may be forwarded to credit bureaus or other institutions at the request of the petitioner via motion to the applicable court at no additional cost to the petitioner.

9.  **If a filing or record is deemed invalid, court costs and fees are the responsibility of the party who originally initiated the filing or record**.  If the filing or record is deemed valid, no court costs or fees, in addition to standard filing fees, shall be assessed.

31

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

111.   The crime of *filing* false documents under RSMo § 570.095 applies to a "recordable statement" that the Missouri Uniform Condominium Act mandates be provided by a Condominium Association to a Unit Owner, RSMo§ 448.3-116.8 <u>Lien for Assessments</u> as follows:

" 8.  <u>The association shall furnish to a unit owner</u> or any holder of a mortgage or deed of trust, <u>upon written request</u>, **a recordable statement** <u>setting forth the amount of **unpaid assessments against the unit owner's unit**</u>.  The statement shall be furnished within ten business days after receipt of the request and is binding on the association, the executive board, and every unit owner unless it is known by the recipient to be false.

112.  As part of the defendants' RICO enterprise to defraud Geivett, they have repeatedly coordinated *criminal* responses to Geivett's "request for a recordable statement setting forth the amount of <u>unpaid assessments </u>against Geivett's unit", as Geivett will particularly allege as part of the chronology of various wrongful acts of defendants' racketeering enterprise in furtherance of the scheme to defraud articulated in Parkside's 14SL Petition, and Amended Petition.

113.  As principles of "Due Process" of law include "Adequate Notice", <u>Restatement of Law, Judgments, (Second) Validity of Judgments</u> §2 Adequate Notice:

"(1) Except as stated in Subsections (2), (3), and (4), notice is adequate only if:(a) The notice is official in tenor, and states that the action is pending or about to be commenced and that there is opportunity to be heard concerning it and affords a reasonable time in which that opportunity may be exercised; …
(4) An action may proceed without notice to a person interested therein when:(a) Urgent public or other necessity justifies an expedited provisional remedy in the action; andn(b) Giving notice to the person is impractical or would frustrate the purpose of the remedy; <u>and **(c) The person is afforded an adequate subsequent opportunity to protect his interes**</u>t.
Comment:
a. *Rationale.* The right to be heard before one's interests are adjudicated is a fundamental principle of fairness. Giving notice to persons whose interests are to be

32

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

adjudicated makes possible their exercise of that right. Under the Due Process Clause of the Constitution, the requirement of adequate notice applies to all types of proceedings, whether in personam, in rem, or quasi in rem. See Restatement, Second, Conflict of Laws §§ 25, 57, and 69.";

*res judicata* and *collateral estoppel* are inapplicable to *"merge"* prosecutions of crime by the government with rights of victims of crime to independently sue criminals who perpetrated the crime against them so as to *"bar"* victims' rights vis-a-vis criminals by virtue of the prosecution. *(see Restatement (Second) of Judgments § 18 (1982));* (i.e California v. O.J. Simpson criminal acquittal did not bar the victims from successfully suing O.J. Simpson in a civil action for wrongful death)

114.  At all times alleged herein Statutory Actions and Torts, Ch. 537 of the Revised Statutes of Missouri  has included in relevant part RSMo §537.050 as follows:

> "**537.050.  Civil action not merged in criminal prosecution**. — In no case shall the right of action of any party injured by the commission of any felony or misdemeanor be deemed or adjudged to be merged in such felony or misdemeanor; **but he may recover the amount of damages sustained thereby in an action to be brought before any court or tribunal of competent jurisdiction.**"

115. RSMo 537.050 (1939)  re-enacted an identical statute the Missouri Supreme Court construed to provide for a direct felony and misdemeanor crime-is-also-tort cause of action for the victim (anachronistically referred to a *negligence per se when the crime is an intentional crime-tort):*

***Cheek v. Prudential Ins. Co. of America,*** 192 S.W. 387, 389-390 (Mo.1916)

> "When an act is commanded or forbidden under a statutory penalty, and a failure to do the act enjoined, or the doing of the act prohibited, causes an injury, the party offending is liable to the party injured for the injury caused by his default, notwithstanding he may also have incurred the penalty."
> *390 The courts of this state have repeatedly spoken in no uncertain tones upon this question. In the case of Drain v.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

Railway Co., 10 Mo. App. 531; Id., 86 Mo. 574, the court, in substance, said: A failure to perform a duty enjoined by statute or ordinance is negligence as a matter of law, for which a recovery may be had by any person injured by reason thereof. …";

*Huckleberry v. Missouri Pac. R. Co.*, 324 Mo. 1025, 26 S.W.2d 980 (Mo.1930) (wrongful death due to a fire ignited by a locomotive that "illegally" moved into a fuel spill area, igniting the fire that killed a 'licensee-invitee' bystander in the area of the railroad right of way):

> [5] [6] Appellant also contends that the case should have been submitted *1037 to the jury on the theory, as we understand it, that <u>plaintiff's son was injured by the commission of a felony</u>, consisting of the above–noted violation by defendant and its employees of certain duties imposed upon them by said regulations of the Interstate Commerce Commission; that **section 4240, R. S. 1919**, created and vested in plaintiff a cause of action on that account separate and distinct from that created by sections 4217, 4218, and 4219 of the wrongful death statute; and that pleas of contributory negligence and assumption of risk were not available to defendant. ***Section 4240 is as follows:*** **"In no case shall the right of action of any party injured by the commission of any felony or misdemeanor be deemed or adjudged to be merged in such felony or misdemeanor; but he may recover the amount of damage sustained thereby in an action to be brought before any court or tribunal of competent jurisdiction."**
>
> **I**f any "right of action" ever existed under this statute on the facts here presented, it evidently belonged to plaintiff's son because he was the party injured by the commission of the felony, if any felony was committed and caused his injuries. But his right of action, if any existed, abated with his death, and a new right of action created by penal section 4217 and damage sections 4218 and 4219 of the wrongful death statute was thereupon vested in his mother. State ex rel. Thomas v.

34

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

Daues, 314 Mo. 13, 31, 283 S. W. 51, 45 A. L. R. 1466; Betz v. K. C. Southern Ry. Co., 314 Mo. 390, 397, 284 S. W. 455; Grier v. Ry. Co., 286 Mo. 523, 228 S. W. 454; Clark v. Ry. Co., 319 Mo. 865, 878, 6 S.W.(2d) 954. Plaintiff's right of action, therefore, was created by the wrongful death statute and not by section 4240. <u>Nevertheless, it is essentially one for the wrongful death of her son,</u> and she has the right under this statute to plead and prove every wrong causatively connected with his death which would have given him a right of action against the defendant if death had not ensued. Crumpley v. Railroad Co., 98 Mo. 34, 37, 11 S. W. 244.

[7] Plaintiff pleaded and introduced evidence tending to prove defendant's violation of certain regulations of the Interstate Commerce Commission, particularly one that inflammable liquids spilled from tank cars should be well covered with dry earth before an engine is used in the vicinity, and also pleaded the act of Congress pursuant to which such regulations were issued <u>which made their **violation a felony**</u>.

…

The rule as to the probative effect of **<u>violation of statute law</u>** is thus stated in 20 R. C. L. s 33, pp. 38, 39, 40:

"In a majority of jurisdictions it is stated as a general rule of law that the violation of a penal or criminal statute is actionable negligence, or as frequently stated is 'negligence per se' or 'negligence as a matter of law.' And this is true although the defendant may also be subject to a penalty provided by the enactment. The principle comprehensively stated is that where a statute or municipal ordinance imposes upon any person a specific duty for the protection or benefit of others, if he neglects to perform that duty he is liable to those for whose protection or benefit it was imposed for any injuries of the character which the statute or ordinance was designed to prevent, and which were proximately produced by such neglect. The precise requirement of the statute must be complied with; no person is at liberty to adopt other methods and precautions which in his opinion are equally or

35

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

more efficacious to avoid injury

116. RSMo §575.050 establishing the crime of false affidavit, was enacted for the benefit and protection - without exception - of every member of the public, including Geivett.

117. RSMo §575.095 establishing the crime of *filing* false documents, was enacted for the benefit and protection - without exception - of every member of the public, including Geivett.

118. From 2012 through 2016, RSMo §565.090 established the crime of Harassment as follows:

**565.090.** — **Harassment.** — 1. A person commits the crime of harassment if he or she:

(1) Knowingly communicates a threat to commit any felony to another person and in so doing frightens, intimidates, or causes emotional distress to such other person; or

(2) When communicating with another person, knowingly uses coarse language offensive to one of average sensibility and thereby puts such person in reasonable apprehension of offensive physical contact or harm; or

(3) Knowingly frightens, intimidates, or causes emotional distress to another person by anonymously making a telephone call or any electronic communication; or

(4) Knowingly communicates with another person who is, or who purports to be, seventeen years of age or younger and in so doing and without good cause recklessly frightens, intimidates, or causes emotional distress to such other person; or

(5) Knowingly makes repeated unwanted communication to another person; or

(6) Without good cause engages in any other act with the purpose to frighten, intimidate, or cause emotional distress to another person, cause such person to be frightened, intimidated, or emotionally distressed, and such person's response to the act is one of a person of average sensibilities considering the age of such person.

2. **Harassment is a class A misdemeanor unless**:

(1) Committed by a person twenty-one years of age or older against a person seventeen years of age or younger; or

(2) The person has previously pleaded guilty to or been found guilty of a violation of this section, or of any offense committed in violation of any county or municipal ordinance in any state, any state law, any federal law, or any military law which, if

36

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

committed in this state, would be chargeable or indictable as a violation of any offense listed in this subsection.  In such cases, harassment shall be a class D felony.

3.  This section shall not apply to activities of federal, state, county, or municipal law enforcement officers conducting investigations of violation of federal, state, county, or municipal law.

119.  The crime of Harassment was meant to protect everyone in the public - without exception -, and Geivett was a member of the public particularly entitled to the protection and benefit of that statute,  with respect to the acts of Ahlheim, Seals, AMC-1, AMC, and Parkside alleged herein through 2016 that aimed at him.

120.  Ahlheim, Seals, AMC-1, AMC and Parkside without good cause engaged in acts including the aforesaid mail fraud, wire fraud, making false affidavits, *filing* false affidavits and documents -Parkside's lawsuits - which incorporated those false affidavits with the purpose to frighten, intimidate, or cause emotional distress to Geivett, and caused Geivett to be frightened, intimidated, and emotionally distressed, and Geivett's response to those acts is one of an average person of average sensibility considering his age, and thereby committed crimes of Harassment against Geivett, all to his injury and damage throughout the time Parkside maintained its' lawsuits and liens against him, and with respect to additional acts to be alleged, and all the acts in furtherance of the defendants racketeering scheme to defraud.

121. Since the beginning of 2017 the present, RSMo §565.090. (2017) established the crime of Harassment as follows:

**Harassment, first degree, penalty**. — 1.  A person commits the offense of harassment in the first degree if he or she, without good cause, engages in any act with the purpose to cause emotional distress to another person, and such act does cause such person to suffer emotional distress.

2.  The offense of harassment in the first degree is a class E felony.

3.  This section shall not apply to activities of federal, state, county, or municipal law enforcement officers conducting investigations of violation of federal, state, county, or municipal law.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

**EXTINGUISHMENT OF LIEN**

122.  After Geivett filed a counterclaim against Parkside and co-counterclaim defendants Ahlheim & Dorsey LLC and Ahlheim, the Court granted Geivett's Motion to transfer the case to the Circuit Court where it was designated 14SL-AC03525 -01.

123. Thereafter, the Circuit Court granted the Motion of Ahlheim & Dorsey Feb. 3, 2017 to Refer the Case to Alternative Dispute Resolution .

124.  The results of Alternative Dispute Resolution will have to be filed under seal, at which time Geivett will incorporate those by reference.

125.  Geivett's counterclaim - Third party claim against Ahlheim ended on or about May 25, 2017,  and on or about June 17, 2017, the Court Order approved the Stipulation for Dismissal with Prejudice as to Geivett's counterclaim against Ahlheim.

126.  Geivett's counterclaim against Ahlheim was "collateral litigation, and at the conclusion of that collateral litigation against Ahlheim in June 2017, Geivett paid his attorneys $75,000.00 for their work prosecuting that claim, cost and expense which is part of the damage caused by the defendants torts and RICO  scheme, and attempted RICO scheme which Geivett has combatted and successfully thwarted, alleged herein.

127.  On April 12, 2018, Defendant Montee asserted,

"1. That AMC Management, LLC is the professional management company for Parkside Condominium Association, that manages Parkside Condominiums for which I act as the Manager and that I am personally familiar with the financial affairs of Parkside, including its budget and its expenses as well as the issues involved in this lawsuit.

2. That over the past four (4) years Parkside has spent hours of time and money defending itself in this cause of action, after receiving estimates of the cost of prosecution of this case and defense of Geivett's affirmative defenses, has been involved in extensive discovery by both sides, that Parkside participated in the prior Court ordered mediation …",

in an affidavit he filed in opposition to disqualifying Ahlheim as attorney for Parkside:**Attachment 16.**

38

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

128.  During that 4 year span dating back to April 2014, AMC and Montee, agreed and conspired to maintain and prosecute the attempted execution of the scheme in lawsuit 14SL-AC0352-01against Geivett, aided and abetted the RICO fraud scheme and enterprise in the preparation, making, and filing false affidavits and documents, approving and ratifying lawsuits with false and deceptive allegations as in the suits against Geivett, composed false documents, filed false documents,  received  payments made pursuant to RICO lawsuits wherein unit owners agreed to pay or obtained Default Judgments against them and in favor of Parkside, AMC and Attorneys fees for Ahlheim, and reaped the financial benefit of the scheme, disbursed the proceeds to Ahlheim and to AMC and Parkside, coupled with filing unprovable liens against units, maintaining recorded liens after 3 year statutory extinguishment,  obstructed Geivett and other allegedly delinquent unit owners from common elements of the condominium including the pool,  particularly Geivett,  committing the crime of making false "recordable statements" ,and  in regard to all of the above activities thereby harassed Geivett, as alleged more particularly hereafter.

129.  AMC and Parkside participated in that scheme by filing the lien against Geivett's property on January 9, 2014 (paragraph 56 above, **Attachment 8 )- t**hereby clouding Geivett's title and planning to maintain that cloud on his title  until he succumbs to the false debts alleged in the pleadings, ie. complete execution of the fraud scheme.

130.  Parkside's lien was not provable in that for years before Geivett owned his condominium unit at Parkside, Parkside failed to follow the procedures mandated by the Condominium Act, the Declaration and Bylaws <u>for the **Association** to approve a budget annually after 30 day written notice of a *proposed*  budget to be addressed at an annual</u> meeting, a required quorum and documented vote of the association, and because Parkside failed to make and keep statutorily mandated corporate records necessary to satisfy the business records foundation to establish a hearsay exception to the objectionable hearsay claim - "the Board established such and such monthly dues amount

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

for year 2012, 2013, 2014 etc."; which validated provable and proved amount the unit owner thereafter failed to pay.

131. Furthermore, the Missouri Uniform Condominium Act extinguished that lien on January 9, 2017, pursuant to the operation of  RSMo §448.3-116.5,

" 5.  A lien for unpaid assessments is extinguished unless proceedings to enforce the lien are instituted within three years after the full amount of the assessments becomes due",

as Parkside never undertook proceedings to enforce the lien.

132. Despite the extinguishment of  the lien,  Parkside has maintained that extinguished lien and refused to file an acknowledgment of extinguishment of that lien.

133.  Montee, AMC, and Parkside participated in the enterprise racket in the two Parkside v. Geivett suits  No.13SL-AC27679  and 14SL-AC30525 as alleged thus far, and those Parkside 8 paragraph Petitions against Geivett were used in each of the cases in paragraphs 134-142 hereafter, which Geivett cites as illustration of the fraud scheme pattern and practice over time and scope Parkside's debt collection suits against its' "delinquent" Unit Owners, as well as a sampling of the execution and attempted execution of the scheme by Ahlheim and AMC in suing other Condominium unit owner delinquency debt collection suits, in each case falsely alleging elements of debt and falsely inflating the amount of debt, in the context of omitting allegations essential to a cause of action for breach of contract debt collection because Parkside could not allege condition precedent performance or occurrence as required by Rule 55.16.

134.  A digitally available example of Ahlheim-Parkside-AMC-1 and  AMC, and Montee fraud scheme is  *Parkside v. Sieburh,* 12SL-AC00802, St. Louis County Associate Circuit Court filed January 2012, alleging in  that Petition, Paragraph 7.

"7.     That Plaintiff via the Board and pursuant to its authority under the Declaration of Parkside, further declared the remaining unpaid annual assessment for **2012**, **$1441.00 (February through December)** immediately due and payable due to the above outstanding balance .",

40

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

when that allegation was a fabrication..

135.  A digitally available example of Ahlheim-Parkside-AMC-1 and  AMC, and Montee fraud scheme is  *Parkside v. Schneider 1*2 SL-AC29864, August 27, 2012, St. Louis County Associate Circuit Court, alleging in that Petition, Paragraph 7.

"7.      That Plaintiff via the Board and pursuant to its authority under the Declaration of Parkside, further declared the remaining unpaid annual assessment for **2012**, **$500.00 (September through December)** immediately due and payable due to the above outstanding balance .",

when that allegation was a fabrication.

136. Another digitally available example of Ahlheim-Parkside-AMC-1 and  AMC, and Montee fraud scheme is  *Parkside v. Lancaster,* 13SL-AC2767  August, 2013, St. Louis County Associate Circuit Court, alleging in that Petition, Paragraph 7.

"7.      That Plaintiff via the Board and pursuant to its authority under the Declaration of Parkside, further declared the remaining unpaid annual assessment for **2013**, **$690.00 (September through December)** immediately due and payable due to the above outstanding balance .",

when that allegation was a fabrication.

137. Another digitally available example of Ahlheim-Parkside-AMC-1 and  AMC, and Montee fraud scheme is  *Parkside v. Lerner,*13SL-33216  October, 2013, St. Louis County Associate Circuit Court filed , alleging in that Petition,  Paragraph 7.

"7.      That Plaintiff via the Board and pursuant to its authority under the Declaration of Parkside, further declared the remaining unpaid annual assessment for **2013**, **$690.00 (September through December)** immediately due and payable due to the above outstanding balance .",

when that allegation was a fabrication.

41

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

138. Another digitally available example of Ahlheim-Parkside- AMC, and Montee fraud scheme is *Parkside v. Fridman,* 14SL-AC26762 , October 2014, St. Louis County Associate Circuit Court , alleging in that Petition, Paragraph 7.

"7.    That Plaintiff via the Board and pursuant to its authority under the Declaration of Parkside, further declared the remaining unpaid annual assessment for **2014**, **$735.00 (October through December 2014)** immediately due and payable due to the above outstanding balance .",

when that allegation was a fabrication.

139.   Another digitally available example of Ahlheim-Parkside- AMC, and Montee fraud scheme during 2015 is, *Parkside v. Saint Ives,* 15SL-AC202888 , St. Louis County Associate Circuit Court filed Jan. 25,2015 alleging in that Petition, Paragraph 7 -

"7.    That Plaintiff via the Board and pursuant to its authority under the Declaration of Parkside, further declared the remaining unpaid annual assessment for **2014**, **$2442.00 (February through December 2014)** immediately due and payable due to the above outstanding balance .",

when that allegation was a fabrication.

140.  Ahlheim-Parkside-AMC-1 and  AMC, and Montee fraud scheme was also used  suing Condominium Unit Owners of Burtonwood Manor Condominium Association , illustrated by *Burtonwood Manor Condominium Association v Herres*, 14SL-AC05730, filed Feb.19 2014, alleging in that Petition, Paragraph 7:

"7.    That Plaintiff via the Board and pursuant to its authority under the Declaration of Buttonwood, further declared the remaining unpaid annual assessment for **2014**, **$2020.00 (March and December)** immediately due and payable due to the above outstanding balance .",

when that allegation was a fabrication.

141. Another digitally available example of Ahlheim-Parkside-AMC-1 and  AMC, and Montee fraud scheme is  Condominium Unit Owners of Burtonwood Manor

42

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

Condominium Association , illustrated by *Burtonwood Manor Condominium Association v Peters,* 12SL-AC003383 filed January 2012 alleging in Paragraph 7,

> "7.        That Plaintiff via the Board and pursuant to its authority under the Declaration of Buttonwood, further declared the remaining unpaid annual assessment for **2012**, **$2079.00 (February through December)** immediately due and payable due to the above outstanding balance."

when that allegation was a fabrication.

142. Another digitally available example of Ahlheim-Parkside-  AMC, and Montee fraud scheme is *Burtonwood Manor Condominium Association v Bauer,* 15SL AC15149 filed June 2015 alleging in Paragraph 7,

> "7.        That Plaintiff via the Board and pursuant to its authority under the Declaration of Buttonwood, further declared the remaining unpaid annual assessment for **2015**, **$1134.00 (July and December)** immediately due and payable due to the above outstanding balance."

when that was fabricated, and Ahlheim's and Montee's affidavits each swore the total due was $2641.40.

**FRAUD SCHEME COUPLED WITH AN EXTORTION SCHEME**

143.  At all times Geivett has owned his Parkside condominium unit,  RSMo §448.3-102. established Powers of unit owners' association, …limiting Parkside's power and authority to include:

> "(11)  **Impose charges for late payment of assessments** and, after notice and an opportunity to be heard, **levy reasonable fines** for violations of the declaration, bylaws, and rules and regulations of the association. and the Declaration & By-Laws do not provide for anything beyond that.

144.  At all times Geivett has owned his Parkside condominium unit, with respect to the Parkside Common Elements, in relevant part, the Parkside Declaration states:

43

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

"3. **Ownership of the common elements and covenant against partition**.

3.1 each unit owner shall be entitled to the percentage of ownership in the common elements allocated to the respective unit owned by such unit order, and set forth in the schedule attached to here to as exhibit parentheses B. The percentages of ownership interest in the common elements allocated to the respective units, and set forth in exhibit B, have been computed and determined in accordance with the act and shall remain constant unless here after changed is provided in article 17 hereof or by agreement of all unit owners any such change to be in accordance with the provisions of the act.

3.2 <u>Said ownership interest in the Common Elements shall be undivided interests and the Common Element shall be owned by the unit owners as tenants in common</u> in accordance with the respective percentages of ownership is set forth in exhibit B. The ownership of each unit and the unit owners corresponding percentage of ownership in the Common Elements shall not be separated as long as the property is subject to the provisions of the act the common elements shall remain undivided and no unit owner shall bring any action for partition or division of the common elements. Any covenant or agreement to the contrary shall be null and void. Nothing contained herein however shall prevent partition of a unit as between coat owners thereof if such right of partition shout otherwise be available but such partition shall not be in kind. Notwithstanding the above no unit may be partitioned or subdivided without prior approval of at least a hold of any first mortgage or deed of trust lean on such unit."

4. <u>**Use of common elements**</u>

4.1 <u>**Each Unit Owner shall have the right to use the common elements in common with all other Unit Owners**</u> as may be required for the purposes of access or ingress and egress to and use and occupancy and enjoyment of the respective Unit owned by such Unit Owner; provided, that the following Common Elements shall be used exclusively by certain unit owners as follows each patio adjacent to a unit shall be for the exclusive use of the Unit Owner as follows:
(i) each patio adjacent to a unit shall be for the exclusive use of the Unit Owner of the Unit to which such patios is adjacent;
(ii) each Deck adjacent to a unit shall be for the exclusive use of the Unit Owner of the Unit to which such Deck is adjacent;

44

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

4.2  <u>Such rights to use the Common Elements shall extend to each Unit Owner, the members of the immediate family of each unit owner, and the guests and other authorized occupants and visitors of each Unit Owner, and such rights shall be subject to and governed by the provisions of the Act and of this Declaration and the Bylaws herein  and the rules and regulations of the association hereinafter referred to.</u> **<u>Each Unit Owner shall be deemed to have an easement, in common with the other Unit Owners, in, upon, across , over, through, and with respect to the Common Elements to the extent of such right to use the Common Elements.</u>** The association shall have the authority to lease or rent or to grant licenses or concessions with respect to any part of the common elements subject to the provisions of the declaration and By-laws.

144.  With respect to the Parkside condominium common elements, in relevant part  <u>By Laws, Article </u>5, Use and  Occupancy Restrictions, Section 2, states:

"The use, maintenance and operation of the common elements shall not be obstructed, damaged, or unreasonably interfered with by any unit owner."

145.   During discovery in Parkside's 14SL-AC30525 suit, Parkside produced Exh 155,  a "Pool rule" purporting to limit access to the pool common elements to Unit Owners  in "good standing".  There was no evidentiary business record foundation to authenticate that rule.

146. In furtherance of the RICO fraud scheme Ahlheim and Seals devised in lawsuit false and fabricated future "immediately due and payable" debt allegations, defendants Seals, defendants Montee, AMC, Parkside, have physically obstructed Geivett from the condominium common element swimming pool and other recreation facilities since April 2014 to the present, as not being "in good standing" by virtue of defending against the Parkside lawsuit that contained the fraud scheme, and since SPVG entered its' appearance in the 14SL suit against Geivett, that defendant has aided and abetted that obstruction, based on Geivett's defense to Parkside's lawsuit, and his continuing refusal to pay the alleged 2013 unpaid assessments, all to Geivett's injury and damage in the amount of $100,000.00.

45

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

147. Defendants physical obstruction of Geivett  from condominium common elements, including recreational facilities, the pool, the meeting rooms, on the basis he is not in "good standing", is in excess of the statutory limitation, RSMo  §448.3-102. (supra ¶ 30 & 106) , "(11) **Impose charges for late payment of assessments** and, after notice and an opportunity to be heard, **levy reasonable fines** for violations of the declaration, bylaws, and rules and regulations of the association."

148. Defendants physical obstruction of Geivett from condominium common elements, including recreational facilities, the pool, the meeting rooms, on the basis of not in "good standing", is in excess of and contrary to the Declaration provisions of 3. Ownership of the common elements and covenant against partition,  and 4. Use of common elements provisions, above.

149. Defendants physical obstruction of Geivett from condominium common elements, including recreational facilities, the pool, the meeting rooms, on the basis he was not in "good standing",  for his success in defending against Parkside's failed 14SL-AC30525 attempted RICO fraud scheme lawsuit is in excess of and contrary By Laws, Article 5, Use and  Occupancy Restrictions, Section 2,:

"The use, maintenance and operation of the common elements shall not be obstructed,
 damaged, or unreasonably interfered with by any unit owner.

150.  The limitation in RSMo  §448.3-102 and the Declaration and By-Laws are consistent with principles announced in Restatement Second, Torts  § § 870, 871,

"One who intentionally deprives another of his legally protected property interest or causes injury to the interest is subject to liability to the other if his conduct is generally culpable and not justifiable under the circumstances."

151.  By defendants physical obstruction of  Geivett from the common elements of the condominium, defendants AMC, Montee, Lee, SPVG, and Parkside have tortiously intentionally deprived Geivett of his legally protected property interest, for which they are culpable and without justification under the circumstances of the Condominium Act,

46

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

the Declaration, and the By-Law provisions, all being composed in reconciliation with common law property rights and tort principles all to Geivett's injury and damage in the amount of $100,000.00 and attorney's fees totaling $250,000.00 and continuing.

152. In addition, during discovery, particularly the depositions of Mickey Montee August 7, 2019, and Parkside Designee Christina Sfreddo Aug. 7, 2019, Geivett's attorneys brought to defendants' attention *Elvaton Towne Condominium Regime II, Inc.v. Rose*, 453 MD 684, 162 A.3d 1027 (2017), affirming declaratory judgment in favor of a Condominium Unit Owners' claim that under the Uniform Condominium Act of Maryland, the condominium association unlawfully prohibited owners from using common elements - the pool -on account of unpaid assessment, as the exclusion was an unlawful talking of owners' tenant in common property interest in the common element, and in excess of authority.

153. Before 2017, defendants AMC, Montee, Parkside obstruction of Geivett from his co-owned common elements and easements forcefully by lockout has been both tortious and criminal harassment pursuant to RSMo §565.090 (2008):

(6) Without good cause engages in any other act with the purpose to frighten, intimidate, or cause emotional distress to another person, cause such person to be frightened, intimidated, or emotionally distressed, and such person's response to the act is one of a person of average sensibilities considering the age of such person.

154. Since 2017, defendants AMC, Montee, Parkside, SPVG in 2018, and Lee since October 2022, have coordinated, aided and abetted one another, and in furtherance of the attempted execution of the RICO fraud scheme in the 14SL-AC30525 suit to make Geivett pay debts he does not owe, thereby these defendants have Harassed Geivett in violation of RSMo §565.090 (2017).

155. Throughout the time the defendants have physically obstructed Geivett from his ownership and easements in the common elements, that obstruction has been managed by Montee and AMC, aided and abetted by SPVG and its attorneys, an extortion

47

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

scheme in furtherance of the attempted RICO fraud scheme in 14SL-AC30525, in an effort to coerce Geivett into voluntarily paying the fraud scheme amounts, and since the failure of Parkside's 14SL-AC30525 lawsuit, the evolution of the defendants' attempted RICO fraud into spurious claims of entitlement to the component fraud scheme component of "attorneys' fees".

156. As alleged earlier regarding the invalidity of the lien in this case, the failure of Ahlheim, Ahlheim Dorsey LLC, Seals, AMC-1, and Parkside to have made and kept corporate business records, and the failure to have made and kept records substantiating compliance with all the requirements in the Uniform Condominium Act, the Declaration, and the Bylaws governing the process for establishing a valid and enforceable budget , in turn from which to establish a valid amount of the monthly assessment properly owed by unit owners, particularly Geivett, Parkside could not ethically allege the essential allegation under Rule 55.16 that the conditions precedent to maintaining a breach of contract debt collection suit were satisfied, or that Parkside could establish a business record exception to a Hearsay objection to any attempt to proffer evidence that 'The Board' made an out of court statement that Geivett's monthly assessment was any particular amount of money.

157. On or about November 18, 2018,  Geivett requested a "Recordable Statement" from Parkside pursuant to RSMo. 448.3-116.8, **Attachment #17.**

"8. The association shall furnish to a unit owner or any holder of a mortgage or deed of trust, upon written request, a recordable statement setting forth the amount of **unpaid assessments** against the unit owner's unit. The statement shall be furnished within ten business days after receipt of the request and is binding on the association, the executive board, and every unit owner unless it is known by the recipient to be false."

158. On or about November 19, 2018,  Parkside responded**: Attachment #18,** excerpted below:

48

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

## NOTICE PURSUANT TO MO. REV. STAT. §448.3-116.8 (2015)

Owner:              Dennis Geivett
2303 Yosemite Park Court, Unit D, St. Louis, MO 63043

Association:      Parkside Condominium Association,
c/o The Community Association Lawyers,
600 Washington Ave., 15th Floor, St. Louis, Missouri 63101

Property Address:  2303 Yosemite Park Court, Unit D, St. Louis, MO 63043

Legal Description:  Unit 4 of Building 1 of Parkside Condominiums, a condominium according to the plat thereof as recorded in Plat Book 243, Page 84, together with an undivided share of the common elements and appurtenances thereto all according to and more particularly described and shown in the "Parkside Condominiums Declaration of Condominium and By-Laws" as recorded in Book 7853, Page 2251 of the records of St. Louis County, Missouri, as may be amended

Date:              November 19, 2018

TAKE NOTICE that Parkside Condominium Association, a Missouri nonprofit corporation, has levied assessments against the above-referenced real property commonly known and numbered as 2303 Yosemite Park Court, Unit D, St. Louis, MO 63043. As of the above date, the amount of unpaid assessments (excluding reasonable attorney's fees, costs, interest, late fees and any other charges that may be owed) is $1,316.00.

159.  RSMo 448.3-116.1 established,

"1. The association has a lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes due. The association's lien may be foreclosed in like manner as a mortgage on real estate or a power of sale pursuant to chapter 443. Unless the declaration otherwise provides, <u>fees, charges, late charges, fines, and interest charged pursuant to subdivisions (10), (11), and (12) of subsection 1 of section 448.3-102 are enforceable as assessments pursuant to this section</u>. If an assessment is payable in installments, the full amount of the assessment is a lien from the time the first installment thereof becomes due.".

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

160.    In Parkside's response, Parkside knew that <u>unpaid assessments</u> excluded attorney's fees, and the quoted amount, $1,316.00 was erroneously in excess of what Geivett's "unpaid assessments" were at that time.

161.    While the Ahlheim & Seals lawsuit scheme was repeated successful in suing unit owners for delinquent dues in debt collection "bulk" dockets in Associate Circuit Court (s) against unrepresented defendants or defaulting defendants, Parkside, AMC, Montee, SPVG, and LEE had no legitimate expectation that the Petition and Amended Petition filed in 14SL-AC30525 without a Rule 55.16 allegation, and without attaching the Declaration and Bylaws required by Rule 55.22 would succeed against zealous advocacy of attorneys called upon to defend a unit owner against the lawsuit and the scheme within it, such that 14SL-AC30525 suit was malicious prosecution, abuse of civil proceedings from the outset, as well as part of the fraud scheme enterprise.

162. On or about Oct. 6, 2022, the Court granted Geivett's Motion in 14SL-AC30525 to dismiss Parkside's suit against Geivett for failure to state a cause of action, primarily because the composition violated Rules 55.16 and 55.22, as follows:

_Parkside Condo Assn._
Plaintiff(s)

vs.

_Geivett_
Defendant(s)

Date _10/6/2022_

Case Number _14SL-AC3525-1_

Division _4_

FILED
OCT 06 2022
JOAN M. GILMER
CIRCUIT CLERK, ST LOUIS COUNTY

ORDER
Deft. Geivett's Motion to Dismiss (Deft.'s 1st Pretrial Motion) is granted. Plaintiff shall file an Amended Petition within 7 days.

163.    When the court granted Geivett's Motion to Dismiss, the 5 year statute of limitations governing breach of contract actions to collect allegedly unpaid contractual

50

debts had expired with respect to the debts Parkside had alleged were due October, November, and December 2013, and January 2014

164.  The Court's further order granting Parkside to October 13, 2022 to file a 2nd Amended Petition was erroneous, as Rule 44.01(b) establishes with respect to the court's discretion to enlarge time, "…but <u>it may not extend the time for taking any action</u> under Rules 52.13, 72.01, 73.01, 75.01, 78.04, 81.04, 81.07, and 84.035 <u>or for commencing civil action</u>."

165.  Geivett had a due process of law constitutional right to the affirmative defense that a suit is time barred by the statute of limitations, Rule 44.01(b) coordinates with that constitutional right, and the violation of Rule 44.01(b) in enlarging the time for Parkside to commence a suit against Geivett for those alleged 2013 breach of contract debts constituted a violation and  deprivation of Geivett's constitutional right to due process of law.

166. **Attachment #19** is the body of Parkside's Second Amended Petition filed Oct. 13, 2022 by defendant Lee & SPVG.

167. As Parkside's Second Amended Petition failed to include a Rule 55.16 allegation of condition precedent satisfaction,  and failed to allege *when* the alleged breach of contract occurred - which would have established the time bar on the face of he pleading the alleged "Count 1 Breach of Contract", and failed to allege what the debts were, and failed to allege special damages required for breach of contract to pay debts, that pleading failed to state a cause of action.

168.  On October 20, 2022, Parkside dismissed that 2nd Amended Petition "without Prejudice", writing:

> " The Association further states that they are in the process of preparing a release of the lien recorded in Book 20831, Page 1420 with the Saint Louis County records without waiver of its rights and remedies of equity at law including RSMo §448.3-116."

51

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

169.  More than a year has passed since that dismissal and Parkside did not attempt to refile their 2d Amended Petition pleading that failed to state a cause of action for breach of contract, the limit of what Parkside could have filed under the "Saving Statute").

170. Parkside's 14SL-AC03525-1 lawsuit thereby has ended in favor of Geivett permanently: filing the suit was malicious prosecution initially; continuation of the suit was malicious prosecution when discovery revealed the antithesis of the required Rule 55.16 allegation of satisfaction of conditions precedent, and the absence of an evidentiary foundation for the creation of the "monthly dues" essential predicate for a breach of contract for failure to pay the charge in addition to being central to the defendants' RICO fraud scheme.

171. Parkside's 2d Amended Petition was an Abuse of Civil Proceedings, filed without any legitimate expectation of successful prosecution, and for the purpose of filing a dismissal without prejudice as a gambit to avoid the mandated award of Attorneys fees to the prevailing party in Parkside's 14SL-AC03525-1 debt collection suit, all pursuant to RSMo 448.3-116.7.

172. Although Geivett was the prevailing party with respect to Parkside's lien, and although Geivett was the prevailing party with respect to Parkside's 14SL-AC03525-1 suit, to date Geivett has not yet been awarded Attorney's Fees as the prevailing party in 14SL-AC03525-1, all to his injury and damage in the amount of $250,000.00 dollars in attorney's fees as a direct proximate result of the 2nd Amended Petition Oct. 13, 2022 filed by Lee on behalf of SPVG, AMC, and Parkside, and then dismissed on Oct. 20, 2022.

173.  In the evolution of defendants' RICO fraud scheme, after the Court ordered Parkside's Amended Petition in 14SL-AC03525-1 dismissed, Parkside's dismissal without prejudice motion stated that Parkside would file a "Release" of the lien - which

52

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

had been extinguished years earlier so that Parkside did not have anything to "Release" , and the Parkside did not do what it wrote it would do.

174 . On or about Dec. 28, 2022, in response to Geivett's request for another "Recordable Statement" (see paragraphs 157-160 above), Lee (SPVG) emailed - 'wired' - a response, **Attachment #20**, excerpted below:

Date:                    December 16, 2022

TAKE NOTICE that Parkside Condominium Association, a Missouri nonprofit corporation, has levied assessments against the above-referenced real property commonly known and numbered as 2303 Yosemite Park Court, Unit D, St. Louis, MO 63043. As of the above date, the amount of unpaid assessments including reasonable attorney's fees, costs, interest, late fees and any other charges that may be owed is $50,973.50.

Parkside Condominium Association,
a Missouri nonprofit corporation

By: _____
_____, Community Manager

175. As the defendants exhibited a knowledge of the proper contents of a "Recordable Statement" of unpaid assessments excluding attorneys fees, as excerpted in paragraph 160 above, and defendants had failed and abandoned their 2d Amended Petition, the statement "unpaid assessments **including reasonable attorneys fees,** … that may be owed" was and is a material misrepresentation of the "unpaid assessments" , such an intentional abuse of the "recordable statement" that it constitutes a felony violation of " **570.095. Filing false documents, offense of, elements** — penalty, enhancement — restitution, when — system to log suspected fraudulent documents, procedure. — 1. **A person commits the offense of filing false documents if**:

**(1) With the intent to defraud, deceive, <u>harass,</u> alarm, or <u>negatively impact financially,</u> <u>or in such a manner reasonably calculated</u> to deceive, defraud, harass, alarm, <u>or negatively impact financially,</u> he or she files, causes to be fil<u>ed</u>** <u>or recorded, or attempts to file or record, creates,</u> uses as genuine, transfers or has

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

transferred, presents, **or prepares with knowledge or belief that it will be filed,** presented, recorded, or transferred to the secretary of state or the secretary's designee, to the recorder of deeds of any county or city not within a county or the recorder's designee, to any municipal, county, district, **or state government entity, division, agency, or office,** or to any credit bureau or financial institution **any of the following types of documents:**

…

   (c)  **Real property recording**;

…

   **(n)  Any other document not stated in this subdivision that is related to real property;** or
**and**

   **(2)  Such document listed under subdivision (1) of this subsection contains materially false information; is fraudulent;** is a forgery, as defined under section 570.090; lacks the consent of all parties listed in a document that requires mutual consent; or is invalid under Missouri law.

   **2.  Filing false documents under this section is a class D felony for the first offense except the following circumstances shall be a class C felony**:,

and hence a class D felony by Montee , and a class D felony by Lee.

   176.  As the defendants exhibited a knowledge of the proper contents of a "Recordable Statement" of unpaid assessments excludes attorneys fees, as excerpted in paragraph 160 above, and defendants had failed and abandoned their 2d Amended Petition the statement "unpaid assessments **including reasonable attorneys fees,** … that may be owed" is a material misrepresentation of the "unpaid assessments" as to Geivett such an abuse of the recordable statement that it constitutes a E felony felony violation of

   RSMo **565.090.  Harassment, first degree, penalty.** — 1.  A person commits the offense of harassment in the first degree if he or she, without good cause, engages in any act with the purpose to cause emotional distress to another person, and such act does cause such person to suffer emotional distress.

   2.  **The offense of harassment in the first degree is a class E felony**.

177.  The transmission of that "Recordable Statement" by internet was another wire fraud transmission in furtherance of the initial scheme to obtain money from Geivett by deceit.

178. Geivett experienced emotional distress as a result of the defendants harassment by materially false information in that Recordable Statement, and incurred additional legal expense combatting and thwarting defendants' RICO fraud scheme as a direct result of this Recordable Statement abuse.

179. Defendants provided this materially misrepresentative "Recordable Statement" in conjunction with their refusal to provide Geivett with an Acknowledgment of Extinguishment of lien, perpetuating the ongoing slander of title of maintaining their lien on the record, thereby clouding Geivett's title and preventing him from selling his condo, part of the defendants RICO fraud scheme of demanding money he did not owe, flanked by obstructing his ability to sell the condo, and continuing obstruction of his access to the common element recreation facility.

180.  Also in conjunction with that materially misrepresentative "Recordable Statement", defendants AMC, Montee, Lee and SPVG defendants denied Geivett his right under RSMo 448.3-118. Association records under the to his financial account-

"The association shall keep financial records sufficiently detailed to enable the association to comply with section 44.4-107 **All financial and other records shall be made reasonably available for examination by any unit owner and his authorized agents."**

to his account ledger.

181.  In preventing  Geivett from examining the financial records of his unit, defendants Montee, Lee, AMC, SPVG and Parkside separately and additionally committed felonious harassment under RSMo 565.090 (2017), as the obstruction was without good cause, intended to harass Geivett, interfere with his ability to sell the condo, contain him within the surrounds of the defendants' RICO fraud scheme.

55

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

182. The evolution of defendants' RICO scheme continued August ,7 2023, when defendant Lee emailed to Geivett's lawyer the following letter, **Attachment #21:**

Dennis Geivett
c/o James E. Hullverson - Attorney
9552 Clayton Road
Saint Louis, MO 63124
*jrhullverson@mac.com*

**Re:    Parkside Condominium Association
        2303 Yosemite Park Court, Unit D, St. Louis, MO 63043**

Dear Mr. Geivett:

This responds to your request for a statement regarding 2303 Yosemite Park Court, Unit D pursuant to your request from August 4, 2024, under the By-Laws of Parkside Condominium Associatoin, for a statement of your account.  The amount due is itemized as follows:

Assessments
|  |  |
|---|---|
| (January 2013 - December 2015 @ $138.00/month) | $ 3,726.00 |
| (January 2016 – December 2017 @ $143.00/month) | $ 3,432.00 |
| (January 2018 – December 2018 @ $150.00/month) | $ 1,800.00 |
| (January 2019 – December 2019 @ $163.00/month) | $ 1,956.00 |
| (January 2020 – December 2020 @ $179.00/month) | $ 2,148.00 |
| (January 2021 – December 2021 @ $188.00/month) | $ 2,256.00 |
| (January 2022 – August 2022 @ $205.00/month) | $ 1,640.00 |
| (September 2022 – August 2023 @ $239.00/month) | $ 2,868.00 |
| Late Fees | $ 1,180.00 |
| Lien Fees | $    98.00 |
| Release of Lien Cost | $    32.00 |
| Certified Copies of Documents | $    44.00 |
| Title Report | $    50.00 |
| Tapestry Searches | $    47.30 |
| Interest (@ 18% per annum through July 2023) | $ 4,445.66 |
| Credits | ($19,178.00) |
| Attorney's Fees (through August 7, 2023) | $58,257.50 |

**                                    TOTAL        $65,352.96**

Please note that regardless of any releases of lien that have been filed by Parkside Condominium Association ("Association"), the Association holds a statutory lien under RSMo § 448.3-116.1. Upon payment in full, the Association would cooperate and execute any additional documentation to effectuate clearing of title. Payment shall be made payable to the Association and sent directly to our office.  Your attention to this matter is appreciated.

Dennis Geivett
c/o James E. Hullverson - Attorney
August 7, 2023
Page 2 of 2

Please note this statement is only good through August 15, 2023. This statement's accuracy only contemplates full payoff of the lien without the need for any additional drafting of documents, negotiation, or correspondence. Any future negotiation, drafting of documents, payment plan, litigation efforts or otherwise will increase the amounts due on this payoff. Your attention to this matter is appreciated.

Very truly yours,

Christopher D. Lee

cc:  Executive Board, c/o Community Manager

56

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

183.  With respect to Lee's letter : (1) Parkside never prevailed with respect to the lien it had filed January 9, 2014; (2) Parkside never prevailed with respect to Parkside's 14SL-AC03525-1 lawsuit  against Geivett that the Court dismissed Oct. 6, 2022, and that Parkside dismissed on Oct. 20, 2022 after refiling a Second Amended Petition Oct. 13, 2022; and (3)there was and is no basis for Parkside, or its attorneys to claim Geivett owes them anything, after the Court in 14SL denied Parkside's motion for attorneys fees in March 2023.

184.  On or about September 9, 2023 Parkside Provided a Response to Geivett's Request for Production including a ledger print out consisting of 5 pages beginning with Geivett's purchase in 2012;  Geivett will attempt to make **Attachment # 22** (it was delivered as a 6.9MB PDF file). In particular, that ledger stated a "balance" as of August 1, 2023 of $2,745.00,  which had  carried forward to the $2,745 total the following:

| Date | Description | Charge | Payment | Date | Ck. # | Balance |
|---|---|---|---|---|---|---|
| 9/1 | Assessment Fee | 138.00 | 138.00 | 10/3/13 | 62386 | 0 |
| 10/1 | Assessment Fee | 138.00 | 0 | | | 138.00 |
| 11/1 | Assessment Fee | 138.00 | **5.00** | 1/28/16 | 1199 | 271.00 |
| 12/1 | Assessment Fee | 138.00 | 0 | | | 409.00 |
| **2014** | | | | | | |
| 1/1 | Assessment Fee | 138.00 | 138.00 | 2/19/14 | No ck. # | 409.00 |
| 1/14 | Lien filing/processing | 98.00 | 0 | | | 507.00 |
| 2/1 | Assessment Fee | 138.00 | 138.00 | 2/19/14 | No ck. # | 507.00 |
| 2/11 | Attorney Fee | 445.00 | 0 | | | 952.00 |
| 3/1 | Assessment Fee | 138.00 | 138.00 | 3/11/14 | No ck. # | 952.00 |
| 4/1 | Assessment Fee | 138.00 | 138.00 | 4/10/14 | 49763 | 952.00 |
| 4/9 | Attorney Fee | 105.50 | 0 | | | 1057.50 |
| 5/1 | Assessment Fee | 138.00 | 138.00 | 5/6/14 | No ck. # | 1057.50 |
| 6/1 | Assessment Fee | 138.00 | 138.00 | 6/6/14 | No ck. # | 1057.50 |

that carried that forward to Nov. 2018 when Parkside provided the $1,316 "Recordable Statement" supposedly excluding attorneys fees and costs, the actual total including bogus attorneys fees and costs from 2013 and 2014 was $1,244.50;

then added 2019, 1 / 3….Attorney Fee… $771.50

and   2019,      5 /29   …Attorney Fee… $550.00 when both of those charges are erroneous, meritless, absurd, and harassing, and those 2019 attorneys fees total $1,321.5;

57

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

… such that the amounts carried forward from 2013 and 2014 which were in Parkside's 14SL suit against Geivett, added to the two "attorney charges" from 2019 total $2,379.00.

185.  Next, in February 2024 Geivett had a contract to sell his  2303 D Parkside condominium for $100,000.00 in the context of tax advantaged transactions that were worth approximately $200,000.

186. In connection with that, the Title company requested a statement from AMC about condominium assessments.

187.  In response to that request, on January 29, 2024 Montee and AMC sent a letter, **Attachment #23,**  which Geivett excerpts:

This covers the next period of: _____/_____/_____ to _____/_____/_____

Are there any delinquent or unpaid assessments? If so, please list delinquent amount & time period it covers:

$65,778.45✱ for a period of _____/_____/_____ to _____/_____/_____

Has a special assessment been levied? _____ If yes, has it been paid?   Y   /   N

188.  This was a document related to real property, covered by RSMo §570.095 (paragraph 110 above).

189.  In sending that letter Montee and AMC wrote a baseless claim excerpted above, and as a direct result of that baseless $69,778.45 claim interfered with and destroyed Geivett's business transaction, all to Geivett's injury and damage in the amount of $200,000.00 and additional attorney's fees.

190.  Montee's letter contained materially false information under RSMo §570.095.2, and Montee sent that with the intent to defraud, deceive, harass, alarm, or negatively impact financially Geivett's sale, knowing it would be used by a financial institution(s) which requested it, and it was a §570.095.1, (n) document related to real property, and Montee thereby committed a class D felony.

191. Throughout the course of the events alleged, the following statute has been operative:

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

**RSMo § 448.1-108.  Supplemental general principles of law applicable.** — The principles of law and equity, including the law of corporations and unincorporated associations, the law of real property and the law relative to capacity to contract, principal and agent, eminent domain, estoppel, fraud, misrepresentation, duress, coercion, mistake, receivership, substantial performance, or other validating or invalidating cause supplement the provisions of sections 448.1-101 to 448.4-120, except to the extent inconsistent with sections 448.1-101 to 448.4-120.

192. Throughout the course of the events alleged, the following statute has been operative:

**RSMo §448.1-114.  Remedies to be liberally administered.** — 1.  The remedies provided by sections 448.1-101 to 448.4-120 shall be liberally administered to the end that the aggrieved party is put in as good a position as if the other party had fully performed.  However, consequential, special, or punitive damages may not be awarded except as specifically provided in sections 448.1-101 to 448.4-120 or by other rule of law.
2.  Any right or obligation declared by sections 448.1-101 to 448.4-120 is enforceable by judicial proceeding.

193. Throughout the course of the events alleged, the following statute has been operative:

**RSMo §448.4-117**. **Effect of violations on rights of action — attorney's fees**. — If a declarant or any other person subject to sections 448.1-101 to 448.4-120 fails to comply with any provision hereof or any provision of the declaration or bylaws, any person or class of persons adversely affected by such failure to comply has a claim for appropriate relief. Punitive damages may be awarded in the case of a willful, wanton and malicious failure to comply with any provision of sections 448.1-101 to 448.4-120. The court, in an appropriate case, may award reasonable attorney's fees.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

**COUNT 1 - DECLARATORY JUDGMENT, RSMo §510.261 UNCONSTITUTINAL**

194. Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

195. The conduct of defendants AMC, MONTEE, Lee and SPVG, and Parkside has been deliberately wrongful in devising a scheme to defraud debtor Geivett,  executing that a scheme against him once amidst execution of that scheme many times against many people by means of conduct that is indictable mail fraud, wire fraud, and attempted extortion,  attempting to execute that scheme in this case as alleged in Counts 3,4,5, and 6 hereafter, in maintaining an extinguished lien slandering title,  in obstructing Geivett from his common element property, in creating and filing "false" documents that constitute the commission of crimes and maintaining a lawsuit that falsely alleged debts while at the same time failed to state a cause of action, and attempting to extort payment for a non-existent claim.

196.  Parkside and AMC were paying a lawyer to prosecute a RICO fraud scheme victimizing unit owners, and then perversely charging the lawyer's "legal fees" against the abused unit owners, all in breach of the duty of Parkside's Board fiduciary duty to use reasonable care to protect unit owners.

197.  Defendants Montee, AMC, Lee, and  SPGV  conduct in refusing to file lien extinguishment acknowledgments  has been intentional and deliberately wrongful .

198. Geivett would be justified and within his rights to allege claims for punitive damages here and now, generally and pursuant to the Condominium Act, **RSMo § 448.1-108**, above, and in accordance with directions to litigants mandated , "*shall -state"*, in Rule 55.19, o wit -

Rule 55.19. Special and Punitive Damages, states in relevant part:

"When items of special damage are claimed, they shall be specifically stated. **In actions where exemplary or punitive damages are recoverable, the petition**

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

**shall state separately the amount of such damages sought to be recovered**. In actions for such damages based upon an alleged tort, no dollar amount or figure shall be included in the demand, but the prayer shall be for such damages as are fair and reasonable."

**199.** The directions of the Court in Rule 55.19 conflict with, and are irreconcilable with directions in RSMo § 510.261, so as to cause and create a conflict for Geivett in pleading.

200. RSMo § 510.261. Punitive damages, restrictions on award of — proper award, when — civil actions, initial pleading not to contain claim for punitive damage award (2020), states in relevant part as follows:

5. No initial pleading in a civil action shall contain a claim for a punitive damage award. Any later pleading containing a claim for a punitive damage award may be filed only with leave of the court. A trial court may grant leave to file such a pleading only on written motion by the claimant, filed no later than one hundred twenty days prior to the final pretrial conference in the case or, if there is no scheduled pretrial conference, one hundred twenty days prior to the date set for trial, that is supported by affidavits, exhibits, or discovery materials establishing a reasonable basis for recovery of punitive damages. Any party opposing leave may file affidavits, exhibits, or discovery materials demonstrating that the standards for a punitive damage award pursuant to this section have not been established. If the trial court concludes, following its review of all materials submitted in connection with the motion, that based on the evidence to be admitted at trial a trier of fact could reasonably conclude, based on clear and convincing evidence, that the standards for a punitive damage award contained in this section have been met, the court shall grant leave to file the pleading seeking a punitive damage award. The court shall rule on a motion for leave to file a pleading seeking punitive damages no later than forty-five days after a hearing on the motion or, if no hearing is held on the motion, after the party opposing the motion has filed its response to the motion. The responsive pleading shall be limited to responding to the newly amended punitive damages claim…

7. No judgment that includes a punitive damage award shall be entered in any civil action in any court of this state, or in any court in which claims are asserted based on the constitution, statutes, or common law of this state, unless the requirements and procedures for a punitive damage award contained in this section and sections 510.263 and 537.675 are met.

61

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

201.  Rule 41.02. Rules - Authority for - Statutes Superseded, states in relevant part:

"Rules 41 to 101, inclusive, are promulgated pursuant to authority granted this Court by Section 5 of Article V of the Constitution of Missouri and supersede all statutes and existing court rules inconsistent therewith."

WHEREFORE, Geivett respectfully requests, prays for and demands the Court adjudge, order, decree and Declare the RSMo §510.261.5 and .7 UNCONSTITUTIONAL together with any other relief and remedy the court deems just, and attorney fees if merited.

**COUNT 2 - QUIET TITLE**

202. Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

203.  Geivett has joined all necessary parties who have a direct and immediate claims or interest in the litigation and who if not joined may have a right to re-litigate property issues in the case, *Buford v Lucy* 328 S.W. 2d 14 (Mo.1959).

204. At all times alleged herein, Geivett has owned Parkside Condominium Association Unit #D, 2303 Yosemite Park Court, St. Louis County Missouri, as more particularly described in paragraph 9, attachment #8 - the lien filed by Parkside January 9, 2014.

205. Parkside's lien was extinguished January 9, 2017, as alleged.

206. Geivett's ownership of Unit # D includes co-tenant ownership of common elements of the Condominium complex, and easement interests, as alleged ¶ 144, and rights under the Declaration and ByLaws as alleged in ¶ s145 and 146.

207.  AMC, Montee, Lee, SPVG, and Parkside have physically obstructed Geivett from his common element property and easements from 2014 to the present.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

208.  The physical obstruction clouds Geivett's title and interferes with his use and enjoyment of the real property itself.

209.  AMC, Montee, and Parkside have repeatedly alleged claims, interests, and liens  against Geivett's property, as alleged in  ¶s56; 74-85 the 14SL suit;157-160 and attachment #18 the "Recordable Statement November 2018; 174-175 and attachment #20 the "Recordable Statement" filed Dec. 28, 2022; ¶ 182 and attachment #21 the letter from Lee August 7, 2023   … "Upon payment in full, the Association would cooperate and execute any additional documentation" …. "full payoff of the lien"; ¶ 184 the ledger Sept. 2023; ¶ 185 - 190 and attachment #23, letter claiming $69,778.45 in the unpaid assessment portion of the lette @ ¶ 187.

WHEREFORE, pursuant to RSMo 527.150, GEIVETT   respectfully requests, prays and demands the court quiet title of the alleged real estate in favor of the plaintiff Geivett and against each defendant, to declare that the title of condo#2303 is in the plaintiff Geivett exclusively, and in particular that the Court Order, Adjudge, and Decree, by one or more documents that:

1.   Parkside's 2013 Lien is extinguished;

2.  Parkside's 2014 Lien is extinguished;

3.  Declaring as in *Elvaton Towne Condominium Regine II Inc. v. Rose*, that the statement *"Admission to the pool is limited to members in good standing, their families and guest of their families",* in the Exh 155 Rule, constitutes an unlawful violation of Geivett's and Unit Owners property and rights to use the common elements pursuant to the Act, Declaration, and By-Laws;

4.  Declaring as in *Elvaton Towne Condominium Regine II Inc. v. Rose*, that enforcement of the Pool Rule statement by interfering with and, or, excluding Geivett and other Unit Owners from common elements for delinquent payment of monthly assessments constitutes an impermissible taking of their property, and is beyond the limited

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

monetary only authority with respect to delinquent payments expressed in the Act, Declaration and By-laws to  statement, and is unlawful;

5. Order defendants to cease and desist from obstructing Geivett from common elements;

6.  enjoin defendants from interfering with Geivett' rights to common elements;

7. Order any other additional means to Quiet Geivett's Title and property interests in Condo#2303 and in the common elements in the Parkside Condominiums; and

8. Order that defendants pay Geivett Attorneys fees in the Amount of $251,000.00 and Court Costs; and,

9. Any and All other orders, judgments and decrees to apply and construe  the  Missouri Uniform Condominium Act in concert with other construction pursuant to RSMo 448.1-110 related to these topics; and

10. Any and All other orders, judgments and decrees to put Geivett in as good a position as if the defendants had fully performed their duties under the Act and under other laws.

11. Attorneys fees and any and all other remedies allowed by law, including RSMo ¶ ¶ 448.1-108;  448.1-114; and 448.4-117.

**COUNT 3 - R.I.C.O. AS TO AMC Management, LLC, "AMC":**

210. Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

211. Ahlheim and Seals d*evised a scheme or artifice to defraud, or for obtaining money or property by means of false or fraudulent pretenses, representations,* whereby they filed suits on behalf of client /employer Parkside against condominium unit owners who were allegedly delinquent on paying monthly condominium association assessments, and include a false, fabricated allegation,

64

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

¶ 7.  "The plaintiff via the Board and pursuant to its authority under the Declaration of Parkside further declared the remaining unpaid annual assessment for 2013, $690.00 (August through December) immediately due and payable due to the above  outstanding balance."

as Geivett alleged in ¶ 25, in  Parkside's 1st suit against Geivett, 13SL-AC27679.

212.  Ahlheim devised that scheme to defraud in the context of working as an attorney for the Ahlheim & Dorsey Law Firm, as detailed in ¶s 23, Attachment #2 ,exemplifying his distinct  role made Ahlheim distinctly governed by the Fair Debt Collection Practices Act vis-a-vis Geivett.

213. Alan Seals devised that scheme to defraud in the context of working as a property manager for AMC-1, and AMC, as detailed in ¶s 2, 7, 8,9, 18 Attachment #1.

214. Parkside was a separate entity that participated in the scheme as a creditor -Plaintiff in debt collection lawsuits against condominium unit owners, as detailed in¶s 23-29;72-82; illustrated by ¶ 133,134,135,136,138,139.

215. The operation of this Ahlheim+Seals+AMC-1+AMC+Parkside, fraud scheme in this case, later adopted by and furthered by Montee and SPVG attorneys was part of, and within the context of,  an *association in fact* "enterprise" as "any individual, partnership, corporation, association, or other legal entity, and any union or group of individuals associated in fact although not a legal entity" (18 U.S.C. § 1961(4)).

216. As a result of the execution of this *scheme* by the operations of the *enterprise* of coordinated participation by Ahlheim, Seals-AMC and Parkside, defendant -victims such as Geivett in the 13SL lawsuit paid money,  thereby affecting interstate commerce, and the defendants profited from those payments.

217. Sometimes victims would deliver payment-money to Ahlheim, sometimes to Seals-AMC-1 or later to AMC.

218.  Ahlheim, Seals, AMC-1, and Parkside "executed" the scheme to conclusion against Geivett in lawsuit 13SL-AC27679.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

219.   In furtherance of the execution of the scheme against Geivett in  lawsuit 13SL-AC27679:

(1)  Ahlheim composed the lawsuit to include the false allegation -  ¶ 7 - and filed it;

(2)  Geivett got served and read the lawsuit, as detailed in¶ 23-29;

(3)  the "wire fraud" element occurred with respect to that particular  operation of the scheme several times:

   (1)  when Geivett phoned Ahlheim's office Sept. 9 to discuss settling, detailed in ¶ 30;

   (2)  when Decker called AMC-1 for a Geivett's ledger, as detailed in¶ 31;

   (3)  when Cindy faxed that ledger, as detailed in ¶ 32, 35 Attachment #3;

   (4)  when Decker and Geivett talked by phone Sept. 11, and agreed to payment, as detailed in ¶s 36,37, 39;

   (5)  when Decker emailed Cindy Sept.11, as detailed in ¶38, attachment 4.

   (6)  when Cindy contacted Decker about how to code the check, as detailed in ¶s42, 43;

   (7)  when Decker emailed Cindy her explanation of the payment, as detailed in ¶44,45 Attachment 6

220. In the operation and "execution" of the scheme, Geivett delivered the cashiers check $2065.50 payable to Parkside - just one of the three participants in the enterprise, thereby affecting interstate commerce, as detailed in ¶s 66,67,68.

221.  The negotiation of Geivett's payment was through interstate commerce and affected interstate commerce, as detailed in ¶s 47,48,49.

222.  The necessary 2 predicate acts of either mail fraud or wire fraud were completely satisfied during the "execution" of the scheme against Geivett in the 13SL suit.

223. The series of transactions, phone calls, emails, payments, payment processing in interstate commerce, in the scheme's operation and execution against Geivett in the 13

66

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

SL suit was representative of how the defendants successfully executed the scheme repeatedly against many victims, a "racket".

224. Within the Ahlheim+Seals/AMC-1+Parkside 3 member association, each had a distinct role in the execution of the scheme in the 13SL lawsuit against Geivett, as detailed in ¶s 94,95,96, and the interplay among the 3 that happened with respect to Geivett's 13SL suit was illustrative of the execution of the scheme against many victims.

225. The Ahlheim+Seals/AMC-1+Parkside enterprise members conspired to attempt to repeat the scheme against Geivett in 2014.

226. To begin the attempt to repeat the scheme, Ahlheim took the overt step of writing Geivett January 14, 2014 announcing the plan to 'operationalize' the scheme against him by filing a lawsuit with a fabricated claim of debt for "immediately due and payable monthly assessments for the remainder of the year", and "mailed" that letter such that the attempt to execute the scheme was "furthered"- again - by use of the U.S. Mail specifically to further this singular episode of the scheme, as detailed in ¶s 57 attachment #9; 58, 59, 60,62,63, 65,69.

227. An additional overt step in the conspiracy to attempt to victimize Geivett again by the scheme occurred when Decker emailed the false affidavit for Seals to sign and return, furthering this particular attempt to execute the scheme by wire fraud and mail fraud, as detailed in ¶ 69,70, 71, 72.

228. In signing the affidavit and returning it by email and U.S. mail, Seals made overt steps to further the conspiracy to attempt to defraud Geivett *again* by the scheme, steps that were indictable wire fraud and mail fraud.

228. Ahlheim assembled the false affidavits into the 14SL Parkside Petition containing the fraud scheme allegation, and filed that in court, additional overt steps in furthering the conspiracy to attempt to defraud Geivett, 14SL-AC03525, as detailed in ¶s 72,73,74,75,76,77,78,79,80,81,82,83, 107, 108, 109.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

229. In the face of the defendants' attempt to defraud Geivett by this scheme, wire was again used in furtherance of the attempt to execute the scheme when Geivett phoned (ie.wire) Decker Feb. 6,7, & 12 2014, as detailed ¶s 84,85; 89.

230. Decker used wire to obtain from Cindy @ AMC-1, a "current ledger"; ¶ 92, attachment 13.

231. Decker used mail in furtherance of the attempt to execute the scheme against Geivett when she mailed the "current ledger", as detailed in ¶s 90, 91,92,93.

232. The entire time Parkside's suit was pending against Geivett, it was an *attempt to defraud him by the scheme,* which AMC adopted and maintained when and after it replaced AMC-1, as detailed in ¶s 2,7,8,9,10,12; 98,99,100, and which Montee likewise adopted and furthered.

233. The entire time Parkside's suit was pending against Geivett, it was an *attempt to defraud him by the scheme,* which SPVG adopted, maintained and furthered when and after it replaced Ahlheim as an attorney for Parkside in the 14SL suit against Geivett.

234. Ahlheim used "wire" to further the attempt to execute the scheme when he emailed Parkside's Amended Petition to Court, which then relayed that by wire to Geivett's counsel, and to Geivett, each event wire fraud within the specific *attempt to execute* the scheme, as detailed in ¶ s 103, 104, 105.

235. As a direct proximate result of the filing 14SL-AC03525 against Geivett as an *attempt* to execute defendants' RICO fraud scheme against him, as alleged in paragraphs 210 - 234, above, Geivett hired attorneys to represent him and defeat that attempt, which has lasted more than 10 years, and has been successful, as the court dismissed Parkside's Amended Petition on Oct. 6, 2022, Parkside filed a Second Amended Petition out of statute of limitations time, which defendants dismissed and abandoned.

236. The actions of Seals in conspiring to devise the fraud scheme, and then signing the affidavit attached to Parkside's 14SL against Geivett in conspiracy to further that fraud scheme, aided and abetted the filing of that suit in an attempt to execute the

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

fraud scheme against Geivett - again - were at all times "indictable" offenses relative to that scheme under 18 U.S.C. 1349 (as detailed in ¶ 63) as the complete commission of the fraud by receiving a payment from Geivett was the object of the  conspiracy and/or the attempts in furtherance of that conspiracy,  and the participation of AMC as property manager for Parkside  in "collecting the assessment fees' ATTACHMENT #1, as successor to AMC-1 maintaining that suit against Geivett established AMC as a participant in the attempt to defraud Geivett by the suit, all of which constituted indictable offenses for which Geivett can affix civil liability on AMC for RICO, 18 U.S.C. 1962(d), and  18 U.S.C. 1964 (c) (CIVIL REMEDIES)

> (c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

237.  Geivett has suffered  serious mental anguish injury for more than 10 years, and sustained special damages of approximately $200,000.00 in failing to sell the condo, taxes, condo fees, maintenance and utilities maintaining the condominium, approximately $250,000.00  attorneys fees in fighting to thwart defendants'  attempt to defraud him. As a direct result of  the R.I.C.O. conspiracy to defraud Geivett ,and attempt to defraud Geivett, as alleged herein, and the participatory conduct of Seals in that scheme while he was property manager for AMC-1 and then AMC, and the participatory conduct of Montee as property manager for AMC,  furthering the lawsuit *attempt to execute the scheme* to defraud Geivett, for which conduct AMC is liable.

WHEREFORE, GEIVETT prays and demands the Court Order, Adjudge and Decree a Judgment against AMC  in his favor for $450,000.00 special damages, together with such amount is fair and just to compensate him for his injury and damages, TRIPLED under civil RICO, together with costs and separately for attorney's fees, jointly

69

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

and severally with other defendants herein, together with any additional and other relief and remedy allowed by law.

**COUNT 4 - R.I.C.O. AS TO Mickey Montee:**

238. Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

239. Geivett specifically re-iterates Count 3 RICO paragraphs 210 through 237, and states that with respect to the ongoing *attempt* to defraud Geivett through Parkside's 14SL lawsuit, when Montee became an active participant and "manager" of AMC as he swore in his 2018 affidavit , ¶127, Attachment 16 , Montee agreed and conspired to further that attempt to defraud Geivett by maintaining the lawsuit against Geivett, as detailed in ¶s 128, 129.

240. Thereafter and in addition to his role as Manager of AMC, and co-conspirator, aider and abettor of the attempt to defraud Geivett by and through the defendants' 14SL RICO lawsuit,  MONTEE  additionally tried to harass and coerce into paying the fraud claim:

- by obstructing Geivett from the pool, recreational facilities, and common elements that Geivett owned as co-tenant or by easement, as alleged ¶   ;

- and by failing to execute an acknowledgment of extinguishment of lien as alleged ¶    ;

- and by providing a false "Recordable Statement" as alleged ¶s 173-177; and,

- and by Attachment 23, providing a false document related to reality the delinquent or unpaid assessments were $69,778.45, as detailed in ¶ s185 - 190.

241. As a direct proximate result of Montee's actions co-conspiring in maintaining Parkside's 14SL-AC0352 suit as an *attempt* to execute defendants' RICO  fraud scheme against Geivett as detailed in paragraphs 210 - 234, above, Geivett employed attorneys to represent him and defeat that attempt, which has lasted more than 10 years, and has been

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

successful, as the court dismissed Parkside's Amended Petition on Oct. 6, 2022, Parkside filed a Second Amended Petition out of statute of limitations time, and sustained all the personal injury and damage alleged in Count 3.

242. The actions of Montee in conspiring to maintain and further the attempt to defraud Geivett by the 14SL lawsuit scheme, and in aiding and abetting the prosecution were "indictable" offenses relative to that scheme under 18 U.S.C. 1349 (¶63) as the object of the attempt and/or conspiracy was the receipt of money from Geivett via the fraud, and the participation of Montee as property manager for Parkside in "collecting the assessment fees' ATTACHMENT #1, as successor to Seals in maintaining that suit against Geivett established Montee as a participant in the attempt to defraud Geivett by the suit, all of which constituted indictable offenses for which Geivett can affix civil liability on Montee for RICO, 18 U.S.C. 1962(d), and  18 U.S.C. 1964 (c) (CIVIL REMEDIES)

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

243. Geivett has suffered  serious mental anguish injury for more than 10 years, and sustained special damages of approximately $200,000.00 in failing to sell the condo, taxes, condo fees, maintenance and utilities maintaining the condominium, approximately $250,000.00  attorneys fees in fighting to thwart defendants' attempt to defraud him. As a direct result of  the R.I.C.O. conspiracy to defraud Geivett ,and attempt to defraud Geivett, as alleged herein, and the participatory conduct of Montee in that scheme while he was property manager for AMC,  for which conduct Montee is liable.

WHEREFORE, GEIVETT prays and demand Judgment against MONTEE  in his favor for $450,000.00 special damages, together with such amount is fair and just to

71

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

compensate him for his serious mental anguish injury and damages, TRIPLED under civil RICO, together with costs and separately for attorney's fees, jointly and severally with other defendants herein, together with any additional and other relief and remedy allowed by law.

**COUNT 5 - R.I.C.O. AS TO Sandberg, Phoenix, & Von Gontard "SPVG":**

244. Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

245. Geivett specifically re-iterates Count 3 RICO paragraphs 210 through 237, and states that with respect to the ongoing *attempt* to defraud Geivett through Parkside's 14SL lawsuit, when SPVG employee lawyers became active participants as attorney of record for Parkside's prosecution of that claim against Geivett (Buckley had entered an appearance limited to <u>defending</u> Parkside against Geivett counterclaims) SPVG agreed and conspired to further that attempt to defraud Geivett by maintaining the lawsuit against Geivett.

246. Thereafter  SPVG lawyer employees, as co- conspirators and abettors of the *attempt* to defraud Geivett by and through the defendants' 14SL RICO lawsuit: -maintained and prosecuted the 14SL lawsuit that on its face violated Rules 55.16 and 55.22 and therefor failed to state a cause of action and was meritless; and

- knew from discovery failed to follow procedures for the proper adoption and enactment of budgets for the Condominium that forever vitiated any allegation that conditions precedent were met or fulfilled;

- knew or should have known from the Fair Dept Collections Practices Act counterclaim that Geivett had again Ahlheim, and the subsequent disqualification of Ahlheim as attorney for Parkside, that the allegations were false, and particularly that the "immediately due and payable" allegation was false and a fraud scheme; and

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

- knew on the face of the Amended Petition filed/accepted October 2014, that the alleged breaches of contract by failing to pay assessments in 2013 were time barred by the 5 year statute of limitations in 2022 when the Court dismissed Parkside's lawsuit.

247. As a direct proximate result of the actions of SPVG lawyers co-conspiring to maintaining 14SL-AC03525 against Geivett as an *attempt* to execute defendants' RICO fraud scheme against him,  Geivett hired attorneys to represent him and defeat that attempt, which has lasted more than 10 years, and has been successful, as the court dismissed Parkside's Amended Petition on Oct. 6, 2022, Parkside filed a Second Amended Petition out of statute of limitations time.

248. The actions of SPVG lawyers conspiring to maintain and further  the attempt to defraud Geivett by the 14SL lawsuit scheme, and in aiding and abetting the prosecution of that  suit in an attempt to execute the fraud scheme against Geivett - again - were all  "indictable" offenses relative to that scheme under 18 U.S.C. 1349 (¶63) as the complete commission of the fraud was the object of the attempt or conspiracy,  and the participation of SPVG for Parkside  in prosecuting the fraud scheme constituted indictable offenses for which Geivett can affix civil liability on SPVG for RICO, 18 U.S.C. 1962(d), and  18 U.S.C. 1964 (c) (CIVIL REMEDIES)

(c) Any person injured in his business or property by reason of a violation of section 1962 of this chapter may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee, except that no person may rely upon any conduct that would have been actionable as fraud in the purchase or sale of securities to establish a violation of section 1962.

249. As a direct result of  SPVG lawyer employees' conspiracy to attempt to defraud Geivett, and actions aiding and abetting that attempt via the maintenance of the 14SL  Geivett sustained special damages of approximately $200,000.00 in failed business selling the condo, taxes, condo fees, maintenance and utilities maintaining the condominium, approximately $250,000.00  attorneys fees, and serious mental anguish

73

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

injury and emotional damage for more than 10 years in fighting-successfully - to thwart defendants' attempt to defraud him by completed execution of the scheme.

WHEREFORE, GEIVETT prays and demands Judgment against SPVG  in his favor for $450,000.00 special damages, together with such amount is fair and just to compensate him for his serious mental anguish injury  and damages, TRIPLED under civil RICO, together with costs and separately for attorney's fees, jointly and severally with other defendants herein, together with any additional and other relief and remedy allowed by law.

**COUNT 6 - R.I.C.O. AS TO PARKSIDE CONDOMINIUM ASSOCIATION:**

250. Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

251. Geivett specifically re-iterates Count 3 RICO paragraphs 210 through 237, and states that with respect to the ongoing *attempt* to defraud Geivett through Parkside's 14SL lawsuit, Parkside ratified and paid for the RICO  actions of participating agents.

252. At all times alleged, Ahlheim was Parkside's agent - attorney, for whose wrongful and criminal acts Parkside is liable.

253. At all times alleged, Seals, AMC-1, and AMC was Parkside's agent property manager for whose wrongful and criminal acts, particularly as alleged in Count 3 Parkside is liable.

254. At all times alleged, SPVG was Parkside's agent - attorney, for whose wrongful and criminal acts Parkside is liable.

255.  As a direct result of  conspiracy to attempt to defraud Geivett, and actions aiding and abetting that attempt via the maintenance  and prosecution of the 14SL lawsuit by the agents, servants, and employees of PARKSIDE, particularly Ahlheim, AMC-1, AMC, Montee,and SPVG,  Geivett has suffered and sustained special damages of approximately $200,000.00 in failed business selling the condo, taxes, condo fees,

74

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

maintenance and utilities maintaining the condominium, approximately $250,000.00 attorneys fees, and serious mental anguish injury and emotional damage for more than 10 years in fighting to thwart defendants' attempt to defraud him, for which Parkside is liable.

WHEREFORE, GEIVETT prays and demands Judgment against PARKSIDE CONDOMINIUM ASSOCIATION  in his favor for $450,000.00 special damages, together with such amount is fair and just to compensate him for his serious mental anguish injury  and damages, TRIPLED under civil RICO, together with costs and separately for attorney's fees, jointly and severally with other defendants herein, together with any additional and other relief and remedy allowed by law.

**COUNT 7 -ABUSE OF CIVIL PROCESS AGAINST AMC**

256.  Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

257.  All the R.I.C.O. Fraud scheme allegations as to defendant AMC in Count 3, constitute an Abuse of Civil Process under Missouri Tort law, in that AMC organized, arranged and made an illegal, improper, perverted use of legal process neither warranted nor authorized by process; (2) defendant AMC had  an improper purpose in exercising such illegal, perverted, or improper use,  to wit to perpetrate a fraud scheme as to Geivett in the 14SL lawsuit as part of a fraud scheme enterprise against  debtor-defendants in Parkside lawsuits, people who were likely to be unrepresented in small claims debt collection docket; and (3) Geivett suffered and sustained all the damage previously alleged as a direct proximate result of that Abuse of Civil Process, in accordance with *Schlafly v. Cori,* 647 S.W.3d 570 (Mo.banc. 2022).

WHEREFORE, Plaintiff Geivett prays and demands Judgment against AMC  in his favor for $450,000.00 special damages, together with such amount is fair and just to compensate him for his serious mental anguish injury  and damages, together with costs

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

and separately for attorney's fees, jointly and severally with other defendants herein, together with any additional and other relief and remedy allowed by law, and only fails to demand a specific amount in Punitive Damages because of the conflict between the statute and the S.Ct.Rule that is the subject of Geivett's Count I request to declare the statute Unconstitutional.

**COUNT 8 - ABUSE OF CIVIL PROCESS AGAINST SPVG**

258.  Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

259.  All the R.I.C.O. Fraud scheme allegations as to defendant SPVG in Count 5 constitute an Abuse of Civil Process under Missouri Tort law, in that SPVG  lawyers organized, arranged and made an illegal, improper, perverted use of legal process neither warranted nor authorized by process; (2) defendant SPVG lawyers had  an improper purpose in exercising such illegal, perverted, or improper use,  to wit to perpetrate a fraud scheme as to Geivett in the 14SL lawsuit as part of a fraud scheme enterprise against debtor-defendants in Parkside lawsuits, people who were likely to be unrepresented in small claims debt collection docket; and (3) Geivett suffered and sustained all the damage previously alleged as a direct proximate result of that Abuse of Civil Process, in accordance with *Schlafly v. Cori,* 647 S.W.3d 570 (Mo.banc. 2022).

WHEREFORE, Plaintiff Geivett prays and demands Judgment against SPVG  in his favor for $450,000.00 special damages, together with such amount is fair and just to compensate him for his serious mental anguish injury  and damages, together with costs and separately for attorney's fees, jointly and severally with other defendants herein, together with any additional and other relief and remedy allowed by law, and only fails to demand a specific amount in Punitive Damages because of the Conflict between the statute and the S.Ct.Rule that is the subject of Geivett's Count I request to declare the statute Unconstitutional.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

**COUNT 9 -ABUSE OF CIVIL PROCESS AGAINST PARKSIDE**

260.  Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

261. All the R.I.C.O. Fraud scheme allegations as to defendant Parkside in Count 6 constitute an Abuse of Civil Process under Missouri Tort law, in that Parkside, by and through its agents and enterprise cohort organized, arranged and made an illegal, improper, perverted use of legal process neither warranted nor authorized by process; (2) defendant Parkside had  an improper purpose in exercising such illegal, perverted, or improper use,  to wit to perpetrate a fraud scheme as to Geivett in the 14SL lawsuit as part of a fraud scheme enterprise against  debtor-defendants in Parkside lawsuits, people who were likely to be unrepresented in small claims debt collection docket; and (3) Geivett suffered and sustained all the damage previously alleged as a direct proximate result of that Abuse of Civil Process, in accordance with *Schlafly v. Cori,* 647 S.W.3d 570 (Mo.banc. 2022).

WHEREFORE, Plaintiff Geivett prays and demands Judgment against PARKSIDE  in his favor for $450,000.00 special damages, together with such amount is fair and just to compensate him for his serious mental anguish injury  and damages, together with costs and separately for attorney's fees, jointly and severally with other defendants herein, together with any additional and other relief and remedy allowed by law, and only fails to demand a specific amount in Punitive Damages because of the Conflict between the statute and the S.Ct.Rule that is the subject of Geivett's Count I request to declare the statute Unconstitutional.

**COUNT  10 - SLANDER OF TITLE  AGAINST AMC**

262. Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

263. The lien Parkside filed on Jan 9, 2014, as detailed in ¶s 56, Attachment 8, 130,129, was meritless, invalid, and unprovable because Parkside had not followed procedures in creating a budget from which to validly apportion a monthly assessment against Geivett.

263. The lien Parkside filed on Jan 9, 2014, as detailed in ¶ 56, Attachment 8, was meritless, invalid, and unprovable because Parkside did not make or keep adequate business records to establish an exception to the exclusion of compound hearsay evidence, to wit : *'the members of a board at some meeting at some time said -one by one - "this is my vote on the budget" and someone said this is the vote tally there are ? yesses to approve the unrecorded words of some budget , and thereby established some budget, and as part of that budget Geivett's share was determined to be $138 dollars per month' which Geivett has failed to pay on certain dates.* "

264. Additionally and separately, Parkside did not undertake to prosecute that lien so that it was extinguished by law on January 9, 2017, 3 years after Parkside filed it, as detailed in ¶s 131,132.

265. Defendant AMC, by and through its manager Montee, together and coordinated with lawyers for defendant SPVG, maintained that invalid, extinguished lien with malice after January 9, 2017, so as to cloud Geivett's title, interfere with his ability to sell the condominium, in further motive to compel him to pay the amounts demanded in the 14 SL lawsuit, notwithstanding the "immediately due and payable" allegation was false and part of a fraud scheme.

266. A lien that states there is a claim for $522, when it has been extinguished by a operation of a statute, is "False", and maintenance of the false lien with malice is slander of title.

266. Parkside dismissed its' 2nd Amended Petition on Oct. 20, 2022 as alleged ¶168, 169, at which time Parkside - by and through Lee, Montee, AMC, and SPVG

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

wrote that they would ".. prepare a release of the lien";   thereafter, however, defendants did not do so and instead maintained the lien.

267.  The defendants maintained that lien with malice from January 9, 2017 onward, including when Montee provided a "Recordable Statement" on or about Dec. 28, 2022, that stated "unpaid assessments … that may be owed is $50,973.50" when defendants knew that was misrepresentative of the allowable unpaid assessments.

268.  The defendants maintained that lien with malice from January 9, 2017 onward, including when on August 7, 2023 Lee wrote a 'statement of account' ¶ 182 - 184, stating the amount due was $65,352.96, and "Upon payment in full, the Association would cooperate and execute any additional  to effectuate clearing of title."

269. The defendants maintained that lien with malice from January 9, 2017 onward, including when Montee submitted a letter to a Title Company preparing to facilitate the sale of Geivett's condominium, and wrote the delinquent or unpaid assessments were $69, 778. 45."

270. Defendants coordinated the Slander of  Geivett's Title by and through the work of Lee and Montee during the scope and course of their agency, service and employment, for which AMC is liable.

271. As a direct result of the Slander of Title, Geivett was unable to sell his condominium, and he has been required to pay realty taxes, condo fees, and utilities all to his injury and damage in the amount of $200,000.00, and is obligated for attorney fees totaling $250,000.00.

272. Defendant  AMC is liable in accordance with *Dumler v. The Nationstar Mortgage LLC,* 585 S.W.3d 343 (Mo.App.W.D.2019), for all those injuries and damages including $231,00.00 Attorneys fees special damages,  *Dumler,* citing *Lau v. Pugh,* 299 S.W.3d 740, 750 (Mo. App. S.D. 2009); see also *First Nat. Bank of St. Louis v. Ricon, Inc.*, 311 S.W.3d 857, 867 (Mo. App. E.D. 2010) (stating that the plaintiff's "attorney's

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

fees [incurred] to remove the cloud on his titles ... constitute[d] a sufficient basis to establish pecuniary loss or injury.").

WHEREFORE, Geivett  prays and demands Judgment in his favor against defendant AMC, jointly and severally with other defendants,  for such damages as are fair and just to compensate him for his injury and damage, and attorneys fees of $250,000.00 to date and increasing, together with other relief and remedy hereinafter alleged, under RSMo § 448.1-108, RSMo §  448.1-110, RSMo §  448.1-113, RSMo § 448.1-114.  (Remedies), RSMo§ 448.4-117. Attorneys fees, and Geivett only withholds a prayer for punitive damages because of the conflict that is the subject of Count 1.

**COUNT  11 - SLANDER OF TITLE  AGAINST DEFENDANT MONTEE**

**273**. Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

274. The lien Parkside filed on Jan 9, 2014, as alleged above ¶s 56, Attachment 8, 130,129,  was meritless, invalid, and unprovable because Parkside had not followed mandated procedures in creating a budget from which to validly apportion a monthly assessment against Geivett.

275. The lien Parkside filed on Jan 9, 2014, as alleged above ¶ 56, Attachment 8, was meritless, invalid, and unprovable because Parkside did not make or keep adequate business records to establish an exception to the exclusion of compound hearsay evidence, to wit : *'the members of a board at some meeting at some time said -one by one - "this is my vote on the budget" and someone said this is the vote tally there are ? yesses to approve the unrecorded words of some budget , and thereby established some budget, and as part of that budget someone said Geivett's share was determined to be $138 dollars per month' which Geivett has failed to pay on certain dates.* "

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

276.  Additionally and separately, Parkside did not undertake to prosecute that lien so that it was extinguished by law on January 9, 2017,  3 years after Parkside filed it, as al as detailed in ¶s 131,132.

277. Defendant MONTEE maintained that invalid, extinguished lien with malice after January 9, 2017, so as to cloud Geivett's title, interfere with his ability to sell the condominium, in further motive to compel him to pay the amounts demanded in the 14 SL lawsuit, notwithstanding the "immediately due and payable" allegation was false and part of a fraud scheme.

278. A lien that states there is a claim for $522, when it has been extinguished by operation of a statute, is "False", and maintenance of the false lien with malice is slander of title.

279.  When Parkside dismissed its' 2nd Amended Petition on Oct. 20, 2022 as alleged ¶s 168, 169, Parkside  - by and through Lee, Montee, AMC, and SPVG - wrote that they would ".. prepare a release of the lien" ; thereafter, however, the did not do so and instead maintained the lien.

280.  Defendant MONTEE maintained that lien with malice from January 9, 2017 onward, including when Montee provided a "Recordable Statement" on or about Dec. 28, 2022, that stated "unpaid assessments … that may be owed is $50,973.50" when he, and the defendants, knew that misrepresented allowable unpaid assessments.

281.  Defendant Montee maintained that lien with malice from January 9, 2017 onward, including when on August 7, 2023, Lee wrote a 'statement of account' as detailed in ¶ s182 - 184, stating the amount due was $65,352.96, and "Upon payment in full, the Association would cooperate and execute any additional  documents to effectuate clearing of title."

282.  Defendant Montee maintained that lien with malice from January 9, 2017 onward, including when Montee submitted a letter to a Title Company preparing to

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

facilitate the sale of Geivett's condominium, and wrote the delinquent or unpaid assessments were $69, 778. 45.", as detailed in ¶s 185-190.

283. Defendants coordinated the Slander of Geivett's Title by and through the work of Lee and Montee during the course and scope of their agency, service and employment, for which Montee is liable.

284. As a direct result of the Slander of Title, Geivett was unable to sell his condominium, and he has been required to pay realty taxes, condo fees, and utilities all to his injury and damage in the amount of $200,000.00, and is obligated for attorney fees totaling $250,000.00.

285. Defendant Montee is liable in accordance with *Dumler v. The Nationstar Mortgage LLC,* 585 S.W.3d 343 (Mo.App.W.D.2019), for all those injuries ad damages including $250,00.00 Attorneys fees special damages, *Dumler,* citing *Lau v. Pugh,* 299 S.W.3d 740, 750 (Mo. App. S.D. 2009); see also *First Nat. Bank of St. Louis v. Ricon, Inc.*, 311 S.W.3d 857, 867 (Mo. App. E.D. 2010) (stating that the plaintiff's "attorney's fees [incurred] to remove the cloud on his titles ... constitute[d] a sufficient basis to establish pecuniary loss or injury.").

WHEREFORE, Geivett prays and demands Judgment in his favor against Montee, jointly and severally with other defendants, for such damages as are fair and just to compensate him for his injury and damage, and attorneys fees of $250,000.00 to date and increasing, together with other relief and remedy hereinafter alleged, under RSMo § 448.1-108, RSMo § 448.1-110, RSMo § 448.1-113, RSMo § 448.1-114. (Remedies), RSMo§ 448.4-117. Attorneys fees; Geivett only withholds a prayer for punitive damages because of the conflict that is the subject of Count 1.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

**COUNT 12 - SLANDER OF TITLE AGAINST DEFENDANT LEE**

**286**. Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

287. The lien Parkside filed on Jan 9, 2014, as alleged above ¶ 56, Attachment 8, 130,129, was meritless, invalid, and unprovable because Parkside had not followed mandated procedures in creating a budget from which to validly apportion a monthly assessment against Geivett.

288. The lien Parkside filed on Jan 9, 2014, as alleged above ¶ 56, Attachment 8, was meritless, invalid, and unprovable because Parkside did not make or keep adequate business records to establish an exception to the exclusion of compound hearsay evidence, to wit : *'the members of a board at some meeting at some time said -one by one - "this is my vote on the budget" and someone said this is the vote tally there are ? yesses to approve the unrecorded words of some budget , and thereby established some budget, and as part of that budget Geivett's share was determined to be $138 dollars per month' which Geivett has failed to pay on certain dates.* "

289. Additionally and separately, Parkside did not undertake to prosecute that lien so that it was extinguished by law on January 9, 2017, 3 years after Parkside filed it, as alleged ¶ 131,132.

290. Defendant LEE maintained that invalid, extinguished lien with malice after October 20,2022, so as to cloud Geivett's title, interfere with his ability to sell the condominium, in further motive to compel him to pay the amounts demanded in the 14 SL lawsuit, notwithstanding the "immediately due and payable" allegation was false and part of a fraud scheme.

291. A lien that states there is a claim for $522, when it has been extinguished by a operation of a statute, is "False", and maintenance of the false lien with malice is slander of title.

83

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

292.  Parkside dismissed its' 2nd Amended Petition on Oct. 20, 2022 as alleged ¶168, 169, Parkside  - by and through Lee, Montee, AMC, and SPVG wrote that they would ".. prepare a release of the lien"  but did not do so and thereafter maintained the lien.

293.  Defendant LEE maintained that lien with malice from October 20,2022 onward, including when Montee provided a "Recordable Statement" on or about Dec. 28, 2022, that stated "unpaid assessments … that may be owed is $50,973.50" when defendants knew that was misrepresentative of the allowable unpaid assessments.

294.  Defendant LEE maintained that lien with malice from October 20, 2022 onward, including when on August 7, 2023 Lee wrote a 'statement of account' as detailed in ¶s 182 - 184, stating the amount due was $65,352.96, and "Upon payment in full, the Association would cooperate and execute any additional  to effectuate clearing of title."

295. Defendant LEE maintained that lien with malice from October 20,2022 onward, including when Montee submitted a letter to a Title Company preparing to facilitate the sale of Geivett's condominium, and wrote the delinquent or unpaid assessments were $69, 778. 45."

296. Defendant LEE coordinated the Slander of  Geivett's Title by and through the work of Montee during the scope and course of their agency, service and employment, for which LEE is liable.

297. As a direct result of the Slander of Title, Geivett was unable to sell his condominium, and he has been required to pay realty taxes, condo fees, and utilities all to his injury and damage in the amount of $200,000.00, and is obligated for attorney fees totaling $250,000.00.

298. Defendants are liable in accordance with *Dumler v. The Nationstar Mortgage LLC,* 585 S.W.3d 343 (Mo.App.W.D.2019), for all those injuries ad damages including $231,00.00 Attorneys fees special damages,  *Dumler,* citing *Lau v. Pugh,* 299 S.W.3d 740, 750 (Mo. App. S.D. 2009); see also *First Nat. Bank of St. Louis v. Ricon, Inc.*, 311 S.W.3d

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

857, 867 (Mo. App. E.D. 2010) (stating that the plaintiff's "attorney's fees [incurred] to remove the cloud on his titles ... constitute[d] a sufficient basis to establish pecuniary loss or injury.").

WHEREFORE, Geivett prays and demands Judgment in his favor against defendant LEE, liable, jointly and severally with other defendants, for such damages as are fair and just to compensate him for his injury and damage, and attorneys fees of $250,000.00 to date and increasing, together with other relief and remedy hereinafter alleged, under RSMo § 448.1-108, RSMo § 448.1-110, RSMo § 448.1-113, RSMo § 448.1-114. (Remedies), RSMo§ 448.4-117. Attorneys fees; Geivett only withholds a prayer for punitive damages because of the conflict that is the subject of Count 1.

## COUNT 13 - SLANDER OF TITLE AGAINST DEFENDANT SPVG

**299**. Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

300. Defendant SPVG is vicariously liable for Geivett's injury and damage resulting from the acts of defendant Lee as alleged in Count 9.

301. Defendant SPVG is vicariously liable for Geivett's injury and damage resulting from the acts of defendant SPVG lawyers from the time they entered an appearance in the lawsuit against Geivett for any and all legal advice they gave Montee and AMC to maintain the extinguished lien after January 9, 2017.

WHEREFORE, Geivett prays and demands Judgment defendant SPVG is liable, jointly and severally with other defendants, to Geivett for Slander of Title, and for such damages as are fair and just to compensate him for his injury and damage, and attorneys fees of $250,000.00 to date and increasing, together with other relief and remedy hereinafter alleged, under RSMo § 448.1-108, RSMo § 448.1-110, RSMo § 448.1-113, RSMo § 448.1-114. (Remedies), RSMo§ 448.4-117. Attorneys fees, and only withholds a prayer for punitive damages because of the conflict that is the subject of Count 1.

85

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

## COUNT  14 - SLANDER OF TITLE  AGAINST DEFENDANT PARKSIDE

**302**. Pursuant to Rule 55.12, plaintiff adopts and incorporates by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

303.  Defendant Parkside is vicariously liable for the Slander of Title liability of one or more of its agents, AMC as alleged in Count 7, Montee as alleged in Count 8, Lee as alleged in Count 9, and /or SPVG as alleged in Count 10.

WHEREFORE, Geivett  prays, and demands Judgment in his favor against Parkside, jointly and severally with other defendants, for such damages as are fair and just to compensate him for his injury and damage, and attorneys fees of $250,000.00 to date and increasing, together with other relief and remedy hereinafter alleged, under RSMo § 448.1-108, RSMo §  448.1-110, RSMo §  448.1-113, RSMo § 448.1-114.  (Remedies), RSMo§ 448.4-117. Attorneys fees, and only withholds a prayer for punitive damages because of the conflict that is the subject of Count 1.

## COUNT 15 - MALICIOUS PROSECUTION AGAINST PARKSIDE

304. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

305. Parkside filed suit 14SL-AC 03525 against Geivett, instigated by and through the coordination of Parkside agents Seals and Ahlheim as alleged in Count 3 - RICO against AMC.

306. Parkside's agents Ahlheim and Seals filed suit 14SL-AC 03525 against Geivett when they lacked probable cause to believe and think that suit was maintainable.

307. Parkside's agents Ahlheim and Seals were motivated by malice in instigating Parkside's suit against Geivett.

86

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

308. As a direct result of Parkside filing that suit, Geivett sustained emotional stress, hired attorneys to defend against the suit all to his injury and damage.

309.  Parkside's suit 14SL-AC 03525 against Geivett terminated in favor of Geivett, particularly on Oct. 6, 2022 when the court granted Geivett's motion to dismiss the Amended Petition for failure to state a cause of action, and later when Defendant Parkside dismissed the 2d Amended Petition.

310.  Geivett paid his attorneys $75,000.00 from collateral litigation he prosecuted against Ahlheim for violating the Fair Debt Collection Practices Act in the composition of Parkside's suit,  damages he is entitled from Parkside.

311.   Geivett has suffered and sustained severe emotional distress throughout the course of 10 years of his successful defense against Parkside's groundless suit, and he has became obligated for $250,000 in legal fees, all to his injury and damage, as a direct result of  Parkside's malicious prosecution of a groundless suit that terminated in Geivett's favor.

WHEREFORE, Geivett prays and demands Judgment in his favor  against defendant Parkside, jointly and severally with other defendants, for such damages as are fair and just to compensate him for his injury and damage, including attorneys fees of $250,000.00 to date and increasing, together with other relief and remedy hereinafter alleged, under RSMo § 448.1-108, RSMo §  448.1-110, RSMo §  448.1-113, RSMo § 448.1-114.  (Remedies), RSMo§ 448.4-117. Attorneys fees; Geivett only withholds a prayer for punitive damages because of the conflict that is the subject of Count 1.

## COUNT  16 - MALICIOUS PROSECUTION AGAINST AMC

312. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

313. Parkside filed suit 14SL-AC 03525 against Geivett, instigated by and through the coordination of AMC agents Seals and Ahlheim as alleged in Count 3 - RICO against AMC.

314. AMC agent  Seals instigated suit 14SL-AC 03525 against Geivett when he lacked probable cause to believe and think that suit was maintainable.

315. AMC agent Seals was motivated by malice in instigating Parkside's suit against Geivett.

316. As a direct result of Seals instigating Parkside filing that suit, Geivett sustained emotional stress, hired attorneys to defend against the suit all to his injury and damage.

317.  Parkside's suit 14SL-AC 03525 against Geivett terminated in favor of Geivett, particularly on Oct. 6, 2022 when the court granted Geivett's motion to dismiss the Amended Petition for failure to state a cause of action, and later when Defendant Parkside dismissed the 2d Amended Petition.

318.  Geivett paid his attorneys $75,000.00 from collateral litigation he prosecuted against Ahlheim for violating the Fair Debt Collection Practices Act in the composition of Parkside's suit,  damages he is entitled from Parkside.

319.   Geivett has suffered and sustained severe emotional distress throughout the course of 10 years of his successful defense against Parkside's groundless suit, and he has became obligated for $250,000 in legal fees, all to his injury and damage, as a direct result of  AMC & Seals instigating filing, and then AMC agent Montee's maintenance of Parkside's malicious prosecution of a groundless suit that terminated in Geivett's favor.

WHEREFORE, Geivett prays and demands Judgment in his favor  against defendant AMC, jointly and severally with other defendants, for such damages as are fair and just to compensate him for his injury and damage, including attorneys fees of $250,000.00 to date and increasing, together with other relief and remedy hereinafter alleged, under RSMo § 448.1-108, RSMo §  448.1-110, RSMo §  448.1-113, RSMo

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

§ 448.1-114. (Remedies), RSMo§ 448.4-117. Attorneys fees; Geivett only withholds a prayer for punitive damages because of the conflict that is the subject of Count 1.

## COUNT 17 - MALICIOUS PROSECUTION AGAINST SPVG

320. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

321. SPVG attorneys maintained 14SL-AC 03525 against Geivett when they lacked probable cause to believe and think that suit was maintainable.

322. SPVG attorneys were motivated by malice in maintaining and prosecuting Parkside's suit against Geivett.

324. As a direct result of maintaining Parkside's suit, Geivett sustained emotional stress, employed attorneys to defend against the suit all to his injury and damage.

325. Parkside's suit 14SL-AC 03525 against Geivett terminated in favor of Geivett, particularly on Oct. 6, 2022 when the court granted Geivett's motion to dismiss the Amended Petition for failure to state a cause of action, and later when Defendant Parkside dismissed the 2d Amended Petition.

326. Geivett has suffered and sustained severe emotional distress throughout the course of 10 years of his successful defense against Parkside's groundless suit, approximately 6 years of which was litigation directed by SPVG attorneys, and he has became obligated for $250,000 in legal fees, all to his injury and damage, as a direct result of SPVG attorneys actions maintaining the prosecution of Parkside's malicious prosecution of a groundless suit that terminated in Geivett's favor.

WHEREFORE, Geivett prays and demands Judgment in his favor against defendant SPVG, jointly and severally with other defendants, for such damages as are fair and just to compensate him for his injury and damage, including attorneys fees of $250,000.00 to date and increasing, together with other relief and remedy hereinafter

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

alleged, under RSMo § 448.1-108, RSMo § 448.1-110, RSMo § 448.1-113, RSMo § 448.1-114. (Remedies), RSMo§ 448.4-117. Attorneys fees; Geivett only withholds a prayer for punitive damages because of the conflict that is the subject of Count 1.

**COUNT 18 - FALSE DOCUMENT FILING CRIME - MONTEE**

327. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

328. As alleged in detail in paragraph 174 , Attachment #20, on or about December 28, 2022, Lee provided as a responsive "Recordable Statement" a document that stated, "As of the above date (December 16, 2022) the amount of unpaid assessments including reasonable attorney's fees, costs, interest, late fees and any other charges that may be owed is $50,973.50".  Signed by Mickey Montee.

329. In signing and providing that document to Geivett, Montee committed the crime of Filing False Documents under RSMo ¶570.095, as alleged in detail in paragraphs 110,111,112 and 175:

"175. As the defendants exhibited a knowledge the proper contents of a "Recordable Statement" of unpaid assessments excludes attorneys fees, as excerpted in paragraph 160 above, and defendants had failed and abandoned their 2d Amended Petition, the statement "unpaid assessments <u>including reasonable attorneys fees</u>, … that may be owed" was and is a material misrepresentation of the "unpaid assessments" ,  such an intentional abuse of the "recordable statement"  that it constitutes a felony violation of  " **570.095.  Filing false documents, offense of, elements** — penalty, enhancement — restitution, when — system to log suspected fraudulent documents, procedure. — <u>1.  **A person commits the offense of filing false documents if**</u>:

**(1)  With the intent to defraud, deceive, <u>harass,</u> alarm, or <u>negatively impact financially,</u> or in such a manner reasonably calculated to deceive, defraud, harass, alarm, or negatively impact financially, he or she files, causes to be filed</u> or recorded, or attempts to file or record, creates, uses as genuine, transfers or has transferred, presents, <u>**or prepares with knowledge or belief that it will be filed,**</u> presented, recorded, or transferred to the secretary of state or the secretary's designee,

90

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

to the recorder of deeds of any county or city not within a county or the recorder's designee, to any municipal, county, district, **or state government entity, division,** agency, or office, or to any credit bureau or financial institution any of the following types of documents:

…

   (c) Real property recording;

…

   (n) Any other document not stated in this subdivision that is related to real property; or

and

   (2) Such document listed under subdivision (1) of this subsection contains materially false information; is fraudulent; is a forgery, as defined under section 570.090; lacks the consent of all parties listed in a document that requires mutual consent; or is invalid under Missouri law.

   **2.** Filing false documents under this section is a class D felony for the first offense except the following circumstances shall be a class C felony:,

and hence a class D felony by Montee , and a class D felony by Lee."

330. Geivett was a member of the public intended to be protected by RSMo ¶570.095,  Montee violated that statute when he provide that "Recordable Statement" with materially false information, and as a direct result of that crime Geivett suffered emotional distress and paid additional attorneys fees to combat and correct it, including in the Quiet Title Count 2 above, all to his injury and damage that he is entitled to recover under RSMo ¶537.050 as detailed in paragraphs 113,114,115,117.

Wherefore, Geivett prays and demands Judgment against Montee for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1.

**COUNT 19 - FALSE DOCUMENT FILING CRIME - LEE**

331. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

91

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

332. As alleged in detail in Count 18,  Lee provided as a responsive "Recordable Statement" a document that stated, "As of the above date (December 16, 2022) the amount of unpaid assessments including reasonable attorney's fees, costs, interest, late fees and any other charges that may be owed is $50,973.50".  Signed by Mickey Montee, which Lee had prepared for Montee to sign.

333. In preparing and providing that document for Montee to sign, and then providing that document to Geivett, Lee committed the crime of Filing False Documents under RSMo ¶570.095, as alleged in detail in paragraphs 110,111,112 and 175.

334. Geivett was a member of the public intended to be protected by RSMo ¶570.095, Lee violated that statute when he provide that "Recordable Statement" with materially false information, and as a direct result of that crime Geivett suffered emotional distress and paid additional attorneys fees to combat and correct it, including in the Quiet Title Count 2 above, all to his injury and damage that he is entitled to recover under RSMo ¶537.050 as detailed in paragraphs 113,114,115,117.

Wherefore, Geivett prays and demands Judgment against Lee for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1.

**COUNT 20 - FALSE DOCUMENT FILING CRIME - AMC**

335. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

336. AMC is vicariously liable to Geivett for Montee's crime alleged in Count 18.

Wherefore, Geivett prays and demands Judgment against AMC for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

**COUNT 21 - FALSE DOCUMENT FILING CRIME - SPVG**

337. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

338. SPVG is vicariously liable to Geivett for LEES's crime alleged in Count 19. Wherefore, Geivett prays and demands Judgment against AMC for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1.

**COUNT 22 - FALSE DOCUMENT FILING CRIME - PARKSIDE**

339. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

340. Parkside is vicariously liable to Geivett for Montee's crime alleged in Count 18, and for Lee's crime alleged in Count 20.

Wherefore, Geivett prays and demands Judgment against AMC for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1.

**COUNT 23 - OBSTRUCTION  OF PROPERTY - MONTEE**

341. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

342. As alleged in detail in paragraphs 143 through 153, Montee has intentionally physically obstruct Geivett from common elements and the pool since 2014, without just cause, all to Geivett's injury and damage in the amount of $100,000.00.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

Wherefore, Geivett prays and demands Judgment against Montee for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1

## COUNT 24 - OBSTRUCTION  OF PROPERTY - AMC

343. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

344. As alleged in detail in paragraphs 143 through 153, Montee has intentionally physically obstruct Geivett from common elements and the pool since 2014, without just cause, all to Geivett's injury and damage in the amount of $100,000.00, and AMC is vicariously liable for that intentional deprivation of property.

Wherefore, Geivett prays and demands Judgment against Montee for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1.

## COUNT 25 - OBSTRUCTION  OF PROPERTY - SPVG

345. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

346. As alleged in detail in paragraphs 143 through 153, Montee has intentionally physically obstruct Geivett from common elements and the pool since 2014, without just cause, all to Geivett's injury and damage in the amount of $100,000.00, and one or more SPVG attorneys has aided and abetted in Montee's actions, for which SPVG is a joint tortfeasor.

Wherefore, Geivett prays and demands Judgment against SPVG for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

**COUNT 26 - OBSTRUCTION  OF PROPERTY - Parkside**

347. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

348. As alleged in detail in paragraphs 143 through 153, Montee has intentionally physically obstruct Geivett from common elements and the pool since 2014, without just cause, all to Geivett's injury and damage in the amount of $100,000.00, and Parkside is vicariously liable for the actions of its' agents, servants and employees Montee, AMC, and SPVG in regard to that intentional interference.

Wherefore, Geivett prays and demands Judgment against Montee for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1

**COUNT 27 - PARKSIDE'S SECOND AMENDED PETITION, Restatement (Second) of Torts § 679 Repetition of Civil Proceedings - LEE**

349.  Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

350. In filing Parkside's Second Amended Petition, defendant Lee Filed a Malicious prosecution without expectation of success, for the Abuse of Civil Process purpose of dismissing it "without prejudice" so as to interfere with and obstruct Geivett's right to attorneys fees as prevailing party in the action to collect alleged delinquent assessments.

351. Lee's action constituted tortious unjust litigation under Restatement (Second) of Torts § 679 Repetition of Civil Proceedings:

"One who repeatedly initiates civil proceedings against another for the same cause of action is subject to liability for the harm caused thereby, if

95

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

(a) the proceedings are initiated without probable cause, and primarily for a purpose other than that of securing the proper adjudication of the claim on which the proceedings are based, and

(b) except when they are ex parte, the proceedings have terminated in favor of the person against whom they are brought.

352.  As a direct result of Lee's filing the Second Amended Petition, Geivett has suffered and sustained  deprivation of attorneys fees of $250,000.00 to date after having prevailed in Parkside's suit, additional expense and harassment, all to his injury and damage.

Wherefore, Geivett prays and demands Judgment against Lee for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1

## COUNT 28 - PARKSIDE'S SECOND AMENDED PETITION,Restatement (Second) of Torts § 679 Repetition of Civil Proceedings - SPVG

353.  Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

354.  SPVG is vicariously liable for Lee's filing Parkside's Second Amended Petition as alleged in Count 27, and the resulting damage to Geivett.

Wherefore, Geivett prays and demands Judgment against SPVG for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1

## COUNT 29 - PARKSIDE'S SECOND AMENDED PETITION,Restatement (Second) of Torts § 679 Repetition of Civil Proceedings - Parkside

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

355. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

356. Parkside  is vicariously liable for Lee's filing Parkside's Second Amended Petition as alleged in Count 27, and the resulting damage to Geivett.

Wherefore, Geivett prays and demands Judgment against Parkside for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1

## COUNT 30 - HARASSMENT - MONTEE

357. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

358. As alleged in detail in paragraphs 118,119,120,121 whoever without just cause engages in acts with the purpose to frighten, intimidate, or cause emotional distress to another person, and such person's response to the act is one of a person of average sensibilities considering the age of such person, commits the crime of harassment.

359.  In addition to the expenses of attorneys fees and loss of sale, Geivett has experienced fright, intimidation, and emotional distress, of a person of average sensibilities considering his age,  as a response and reaction to, and as a direct result of the series of Montee's crimes,  filing false documents crimes, 'not in good standing' obstruction of property without just cause under the Condominium Statute of Missouri, the condominium documents,  and the decision in *Elvaton Towne Condominium Regime II, Inc.v. Rose*, 453 MD 684, 162 A.3d 1027  (2017) made known to defendants during discovery depositions in 2018 and 2019 and attached to Geivett's Amended Petition, the RICO FRAUD scheme, Abuse of Civil Proeedings, Malicious Prosecution, Slander of Title, as alleged defendants Lee, Montee, AMC, SPVG, and Parkside  have committed

97

the crime(s) of harassment under RSMo 565.090 (2008) and from 2017 RSMo 565.090 (2017), all to his injury and damage.

WHEREFORE, Wherefore, Geivett prays and demands Judgment against Montee for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1.

## COUNT 31 - HARASSMENT - AMC

360. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

361. AMC is vicariously liable for the damage suffered and sustained by Geivett as a direct result of the Harassment crimes committed by Montee.

WHEREFORE, Wherefore, Geivett prays and demands Judgment against AMC for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1

## COUNT 32 - HARASSMENT - LEE

362. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

363. As alleged in detail in paragraphs 118,119,120,121 whoever without just cause engages in acts with the purpose to frighten, intimidate, or cause emotional distress to another person, and such person's response to the act is one of a person of average sensibilities considering the age of such person, commits the crime of harassment, and LEE has repeatedly harassed Geivett in litigation and after the end of litigation.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

364.  In particular, Lee's letter August 2023, paragraph 182 and attachment 21, including **"Upon payment in full, The Association would cooperate and execute any additional documentation to effectuate clearing of title"** unveils interference with property, in conjunction with ongoing obstruction of common elements, and an intent to continue that deprivation of property and interference with property rights unless Geivett pays a non-existent $65 thousand dollar debt, which is in *attempted* extortion in violation of  The Anti-Racketeering Act, or Hobbs Act, 18 U.S.C.A. § 1951, as detailed in paragraph 64  and 155 above.

365.  In addition to the expenses of attorneys fees and loss of sale, Geivett has experienced fright, intimidation, and emotional distress, of a person of average sensibilities considering his age,  as a response and reaction to, and as a direct result of the series of false affidavits crimes,  filing false documents crimes, 'not in good standing' obstruction of property without just cause under the Condominium Statute of Missouri, the condominium documents,  and the decision in *Elvaton Towne Condominium Regime II, Inc.v. Rose*, 453 MD 684, 162 A.3d 1027  (2017) made known to defendants during discovery depositions in 2018 and 2019 and attached to Geivett's Amended Petition, the RICO FRAUD scheme, Abuse of Civil Procedings, Malicious Prosecution, Slander of Title, Repetition of unjust litigation as alleged defendants Lee, Montee, AMC, SPVG, and Parkside  have committed the crime(s) of harassment under RSMo 565.090 (2008) and from 2017 RSMo 565.090 (2017), all to his injury and damage.

WHEREFORE, Wherefore, Geivett prays and demands Judgment against LEE for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1

**COUNT 33 - HARASSMENT - SPVG**

366. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

367. SPVG is vicariously liable to Geivett for Lee's harassment alleged in Count 27.

WHEREFORE, Wherefore, Geivett prays and demands Judgment against SPVG for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1

**COUNT 34 - HARASSMENT - PARKSIDE.**

368. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

369. Parkside  is vicariously liable to Geivett for Montee's Harassment  alleged in Count 26, and Lee's harassment alleged in Count 27.

WHEREFORE, Wherefore, Geivett prays and demands Judgment against SPVG for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1.

**COUNT 35 - TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY-MONTEE**

370. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

371. Montee tortiously interfered with Geivett's contract to sell his condominium, as alleged in detail in paragraphs 185 - 191 and attachment #23, all to Geivett's injury and damage.

WHEREFORE, Wherefore, Geivett prays and demands Judgment against Montee for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1.

## COUNT 36 - TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY-AMC

372. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

373. AMC is vicariously liable for Montee tortiously interfering with Geivett's contract to sell his condominium, as alleged in detail in paragraphs 185 - 191 and attachment #23, all to Geivett's injury and damage.

WHEREFORE, Wherefore, Geivett prays and demands Judgment against SPVG for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1.

## COUNT 36 - TORTIOUS INTERFERENCE WITH BUSINESS EXPECTANCY-PARKSID

374. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

375. Parkside is vicariously liable for Montee tortiously interfering with Geivett's contract to sell his condominium, as alleged in detail in paragraphs 185 - 191 and attachment #23, all to Geivett's injury and damage.

WHEREFORE, Wherefore, Geivett prays and demands Judgment against SPVG for such sum as is fair, just, and reasonable to compensate him for his injury and damage, and does not plead punitive damages because of the statutory and Rule conflict alleged in Count 1.

**COUNT 37**

376. Pursuant to Rule 55.12, plaintiff adopts by reference for all purposes all statements, allegations, and attachment-exhibits in this Petition, before and after this Count.

377. In addition to the particular prayers for Judgment against the defendants, Geivett prays for any and all other relief and remedy and allowed by law, costs, and the particular rights under  RSMo § 448.1-108, RSMo §  448.1-110, RSMo §  448.1-113, RSMo § 448.1-114.  (Remedies), RSMo§ 448.4-117.

Attachments :


Respectfully submitted

*JAMES E. HULLVERSON, JR.*
Attorneys for  Plaintiff Dennis Geivett:
Hullverson  & Hullverson, L.C.
<u>/s/ *James E. Hullverson, Jr*</u>
James E. Hullverson, Jr. Mo.Bar 26885
9552 Clayton Rd.
St. Louis, MO 63124,    jrhullverson@mac.com

Electronically Filed - ST LOUIS COUNTY - July 02, 2024 - 01:49 PM

To be inserted on RSMo  no merger criminal statute  - victims can sue based on violation of statute. -

Moreover, section 537.090 is a remedial statute that must be applied to promote the object of the legislative enactment. O'Grady v. Brown, 654 S.W.2d 904, 907–08 (Mo. banc 1983). Remedial statutes are construed broadly and liberally to effect the statute's plain purpose. Hudson v. State Security Ins. Co., 555 S.W.2d 859, 861 (Mo.App.1977). Ensuring that tortfeasors pay for the consequences of their actions has been identified as one purpose of a wrongful death action filed under Chapter 537. Smith v. Brown & Williamson Tobacco Corp., 275 S.W.3d 748, 765 (Mo.App. W.D.2008). In line with this purpose, we decline to construe section 537.090 to disallow recovery of damages for pain

quote from Delacroix 28 million pelt verdicts wrongful death plane crash product liability suit Franklin County.

103